**FRITO–LAY OF PUERTO RICO, INC., Plaintiff,**

v.

**Jose Martinez CAÑAS, Defendant.**

Civ. No. 78–1813.

United States District Court, D. Puerto Rico.

Oct. 8, 1981.

---

Arthur S. Friedman, Peter N. Wang, Dorit S. Heimer, New York City, Pedro J. Santa, Hato Rey, Puerto Rico, for plaintiff.

Milton Rua, Hato Rey, Puerto Rico, for defendant.

Rua, Hato Rey, Puerto Rico, for defendant.

## OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

On February 12, 1981, this Court issued an Opinion and Order granting a motion for partial summary judgment filed by plaintiff, Frito-Lay of Puerto Rico, Inc. (hereinafter referred to as Frito-Lay), with certain modifications as to the amount of damages originally sought by Frito-Lay. Several motions are now pending before the Court in connection therewith.

■ The defendant, José Martínez Cañas (hereinafter referred to as Martínez), has filed a Motion for Reconsideration of Opinion and Order and a separate Motion Requesting a Hearing with respect to the Motion for Reconsideration. While Martínez' Motion for Reconsideration was not made strictly within the framework of Rule 59(e) of the Federal Rules of Civil Procedure since the motion was filed before entry of judgment,[1] the Motion may properly be entertained as a motion to alter or amend a judgment under that rule. *Smith v. Hudson*, 600 F.2d 60, 62 (6 Cir., 1979), cert. dismissed 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979). Frito-Lay has submitted an Opposition to the Motion for Reconsideration, together with a Cross-Motion for Amendment of Judgment, which was unopposed.

Martínez has also moved under Rule 60(b)(3), F.R.C.P., claiming Frito-Lay's judgment was procured by "fraud". An opposition to said Motion was filed by Frito-Lay on June 29, 1981.

In addition, Frito-Lay has filed a verified request seeking various relief in connection with its attempt to execute on its judgment against Martínez, his former wife and the conjugal society which existed between them. The Court held a hearing on Frito-Lay's application on June 16, 1981, at which time Martínez orally "moved" for a stay of execution pending the Court's determination of Martínez' Rule 59(e) and Rule 60(b)(3) motions.

Since all motions are ripe for this Court's determination, the matters will be considered *seriatim*. For the reasons hereinafter set forth, Martínez' motions are denied, Frito-Lay's cross-motion is granted, and execution is ordered as set forth *infra*.

### A. Martínez' Motion for Reconsideration.

■ Martínez' Motion for Reconsideration seeks the reversal or vacation of the Court's February 12, 1981, Opinion and Order, primarily on the ground that the Court did not consider Martínez' untimely opposition to the Reply filed by Frito-Lay in further support of its motion for partial summary judgment. While this Court is not persuaded by Martínez' argument that the Court erred in not considering Martínez' untimely sur-reply papers,[2] since Martínez'

---

1. Judgment was entered in compliance with this Court's February 12, 1981, Opinion and Order, on February 25, 1981.

2. Three days after Frito-Lay's Reply was served, Martínez filed a motion seeking approximately one month in which to file sur-reply papers; Frito-Lay opposed that request on the ground that Martínez was not entitled to file a sur-reply, and argued, in the alternative, that in the event the Court permitted Martínez to file a sur-reply, he should be granted only ten days in which to do so. This Court "denied" Martínez' request and "granted" Frito-Lay's request; it was the Court's opinion that Martínez would at most have been entitled to file sur-reply papers with respect to new issues raised in Frito-Lay's Reply, and that since the Reply contained no issues not previously raised by Frito-Lay or

Martínez, Martínez' motion should be denied. While Martínez might have interpreted our decision as denying his request for the particular amount of time he sought and granting Frito-Lay's alternative request that Martínez' sur-reply papers should in any event be filed by the earlier date proposed by Frito-Lay, there is no doubt that Martínez' papers were untimely filed even under that interpretation. Certainly, the Court's inherent power to control proceedings before it entitles the Court to disregard a party's submission of untimely papers. *See, e. g., Delong Corp. v. Raymond International, Inc.*, 622 F.2d 1135, 1140 (3 Cir., 1980); *Jones v. Menard*, 559 F.2d 1282, 1285 n.5 (5 Cir., 1977). As for Martínez' counsel's assertion that he was not notified of the Court's order concerning the issue of Martínez' sur-reply, it is elementary that even if the Clerk of the Court

Motion for Reconsideration concededly repeats the substance of the sur-reply previously ignored by the Court, and since our examination of the Motion for Reconsideration reveals no basis for vacating the judgment previously entered, Martínez' motion is denied.

The alteration, amendment or vacation of a judgment previously entered is a matter addressed to the Court's discretion. *Willens v. University of Massachusetts*, 570 F.2d 403 (1 Cir., 1978); *Florencio Román v. Puerto Rico Maritime Shipping*, 454 F.Supp. 521 (D.P.R., 1978). To the extent that the Motion for reconsideration merely reasserts legal arguments previously made by Martínez in his opposition to Frito-Lay's motion, all of which were carefully considered by the Court prior to its issuance of the Opinion and Order, and, for the most part, were rejected by the Court,[3] we hold that there is no reason to vacate the Court's earlier Opinion and Order. As another District Court has stated:

"Although plaintiff has labeled his motion a 'Motion to Alter Judgment' allegedly pursuant to Rule 59(e), in actuality the plaintiff is moving the Court to reverse its order granting summary judgment to defendant and instead grant summary judgment to plaintiff or, in the alternative, grant plaintiff a trial of an allegedly disputed material fact.

"The plaintiff in his brief brings forward no matter that could not have been argued before judgment was entered herein. His brief in support of his motion is no more than an expression of a view of the law contrary to that set forth in the Court's opinion. Whatever may be the purpose of Rule 59(e) it should not be supposed that it is intended to give an unhappy litigant one additional chance to sway the judge.

"Since the plaintiff has brought up nothing new—except his displeasure—this Court has no proper basis upon which to alter or amend the order previously entered. The judgment may indeed be based upon an erroneous view of the law, but, if so, the proper recourse is appeal—not reargument."

*Durkin v. Taylor*, 444 F.Supp. 879, 889 (E.D. Va., 1977); accord *Erickson Tool Co. v. Balas Collet Co.*, 277 F.Supp. 226, 233 (N.D. Ohio, 1967), aff'd. 404 F.2d 35 (6 Cir., 1968); *Blair v. Delta Airlines, Inc.*, 344 F.Supp. 367 (S.D.Fla., 1972), aff'd. 477 F.2d 564 (5 Cir., 1973). See also: *Chastain v. Kelley*, 510 F.2d 1232, 1233, 1238, f.n.7 (D.C.Cir., 1975); *Parks v. "Mr. Ford"*, 68 F.R.D. 305, 310 (E.D.Pa., 1975); *Spatz v. Nascone*, 368 F.Supp. 352 (W.D.Pa., 1973); Cf. *Morgan Guaranty Trust Co. of New York v. Third National Bank of Hampden County*, 545 F.2d 758, 760 (1 Cir., 1976) (erroneous interpretation of law may be proper subject of Rule 59(e) motion).

Nor does Martínez present any *new* legal arguments, or any issues of fact, which justify vacation of the Court's Opinion and Order. As was discussed at length in our previous Opinion and Order, Frito-Lay has demonstrated that there are no genuine issues of material fact with respect to Frito-Lay's entitlement to recover from Martínez on account of a variety of misappropriations by Martínez when he was the president of Frito-Lay, and most of Frito-Lay's allegations have been confirmed by Martínez' own admissions made during the course of his many-sessioned deposition. There can be no question that it was incumbent upon Martínez to refute Frito-Lay's showing by sufficient and substantial specific *factual* evidence supporting the existence of a factual dispute. *Hahn v. Sargent*, 523 F.2d 461 (1 Cir., 1975), cert. denied 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 54 (1976).

Furthermore, there can be no question that, in considering the factual record

---

had failed to notify counsel of the order (and the Court's records are to the contrary) that would not justify a party's failure to meet otherwise applicable time requirements. *See* Rule 77(d), F.R.C.P.

**3.** The Court will not here repeat the substance of its February 12, 1981, Opinion and Order, and refers the parties to that Opinion and Order for details as to the Court's earlier findings and holdings.

made by Martínez in opposition to Frito-Lay's motion for summary judgment, the Court could consider *only* facts properly put into evidence by the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. 56(c), (e) F.R.C.P. Accordingly, the Court was obligated to—and did—ignore any "facts" set forth only in Martínez' unsworn memorandum of law, for legal memoranda and oral argument are not evidence. *Lacey v. Lumber Mutual Fire Insurance Co.*, 554 F.2d 1204 (1 Cir., 1977); *British Airways Board v. Boeing Co.*, 585 F.2d 946 (9 Cir., 1978); *Flaherty v. Warehousemen, Garage & Service Station Employees' Local Union No. 334*, 574 F.2d 484 (9 Cir., 1978); *James v. The H. M. S. Port Lyttleton Port Line Limited*, 51 F.R.D. 216 (E.D.Pa., 1971).

Similarly, the Court must ignore any "facts" now raised in the Motion for Reconsideration, which includes no affidavit, but consists *only* of counsel's arguments.[4] Indeed, we have serious doubt whether in any event Martínez would be entitled to "reconsideration" of the Court's grant of summary judgment to Frito-Lay based on evidentiary material which Martínez could have presented, but may have chosen to withhold, on Frito-Lay's original motion for summary judgment. If there is any such material—which, we add, is not at all apparent from the papers presented—this Court is obligated to hold Martínez to his own tactical judgment. *Willens v. University of Massachusetts, supra*, at 406; accord. *DeLong Corp. v. Raymond International, Inc.*, 622 F.2d 1135, 1139–40 (3 Cir., 1980); Cf. *United States v. Sclamo*, 578 F.2d 888, 892 (1 Cir., 1978).

By contrast, the Court did properly consider Martínez' own affidavit; the Court also considered the affidavits submitted by Frito-Lay, including that of a certified public accountant undisputably competent to testify as to certain facts dis-

cussed in the Opinion and Order, and that of Frito-Lay's counsel, which was properly offered only to establish matters of record and other facts as to which he was competent to testify. *Grenader v. Spitz*, 390 F.Supp. 1112 (S.D.N.Y., 1975), rev'd. on other grounds, 537 F.2d 612 (2 Cir., 1976); *Douglas v. Beneficial Finance Co. of Anchorage*, 334 F.Supp. 1166 (D.Alaska, 1971). Indeed, the affidavit of one of Frito-Lay's attorneys, instead of providing an independent source for the determination of factual issues, served primarily as a vehicle to introduce Martínez' admissions of liability, which were quoted *verbatim* from the deposition of Martínez taken by said affiant. Martínez' suggestion that those deposition excerpts (or the deposition transcripts themselves, which were also submitted to the Court) are inadmissible on the motion for summary judgment, is belied by the express language of Rule 56(c); moreover, the deposition excerpts were also properly considered as "admissions on file" which would be admissible even if the entire deposition transcripts were not admissible in evidence. See *Securities and Exchange Commission v. American Realty Trust*, 429 F.Supp. 1148 (E.D.Va., 1977), rev'd. on other grounds, 586 F.2d 1001 (4 Cir., 1978); *Douglas v. Beneficial Finance Co. of Anchorage, supra; Rheaume v. Patterson*, 289 F.2d 611 (2 Cir., 1961).

Furthermore, although Martínez argues, apparently in the alternative, that since the Court considered the parts of Martí deposition introduced by Frito-Lay as Martínez' admissions, the Court was required to accept *all* of Martínez' deposition testimony; that is clearly not so. For, whereas the deposition of an adverse party may be used for any purpose, it is clear that a party's *own* deposition is not admissible, except under circumstances not pertinent here. Rule 32(a)(2), (3), F.R.C.P. More important, although Martínez suggests that his deposi-

---

4. In addition, Martínez' Motion for Reconsideration is accompanied by his counsel's "sworn statement", which is addressed only to the subjects of (1) Martínez' sur-reply, already discussed *supra*, and (2) the appropriateness of the Court's consideration of certain of Frito-Lay's claims on account of misappropriations detailed during discovery in this action. See *infra*.

tion testimony taken as a whole indicates disputes as to material facts, Martínez has not specifically referred the Court to any such disputes (albeit he has made certain vague references to what the Court considers insignificant "facts"), as would be his obligation if Martínez sought to introduce additional parts of his deposition which he claimed ought in fairness to be considered with the parts introduced by Frito-Lay, pursuant to Rule 32(a)(4). *Palmer Coal & Rock Co. v. Gulf Oil Co.*, 524 F.2d 884 (10 Cir., 1975), cert. den. 424 U.S. 969, 96 S.Ct. 1466, 47 L.Ed.2d 736 (1976). Absent such specific references to material facts evidencing triable disputes, Martínez' insistence that there are such disputes are merely conclusory denials which are insufficient to refute Frito-Lay's showing that there are no genuine issues of material fact. *Molinos de Puerto Rico, Inc. v. Sheridan Towing Co.*, 62 F.R.D. 172, 176 (D.P.R., 1973).

Martínez' suggestions that he might discover evidence sufficient to defeat Frito-Lay's motion by, *inter alia*, cross-examining Frito-Lay's affiants is unavailing as a substitute for the showing required by Rule 56(c). For summary judgment may not be defeated on the "gossamer threads of whimsey, speculation and conjecture". *Hahn v. Sargent, supra*, at 461 (quoting *Manganaro v. Delavel Separator Co.*, 309 F.2d 389, 393 (1 Cir., 1962), and Martínez was required to do more than suggest that "something might turn up at trial". *Pérez v. United States*, 594 F.2d 280, 291 (1 Cir., 1979) (quoting *Soar v. N.F.L. Players' Association*, 550 F.2d 1287, 1289, fn.4 (1 Cir., 1977). Accord *Neely v. St. Paul Fire & Marine Ins. Co.*, 584 F.2d 341 (9 Cir., 1978); *Berard v. General Motors Corp.*, 493 F.Supp. 1035 (D.Mass., 1980). To avoid summary judgment a party "must do more than whet the curiosity of the court; he

must support vague accusations and surmise with concrete particulars". *Applegate v. Top Associates*, 425 F.2d 92, 96 (2 Cir., 1970). Certainly, Martínez' mere hope to discredit Frito-Lay's witnesses on cross-examination, without any indication of what he hopes to elicit in that manner, is insufficient to defeat summary judgment. *Modern Home Institute, Inc. v. Hartford Accident and Indemnity Co.*, 513 F.2d 102 (2 Cir., 1975); *Weit v. Continental Illinois Bank and Trust Co.*, 467 F.Supp. 197 (N.D. Ill., 1978); *Buckley v. Vidal*, 327 F.Supp. 1051 (S.D.N.Y., 1971). A *fortiori*, Martínez' counsel's suggestion that summary judgment should have been denied because he had not yet had an opportunity to cross-examine Martínez *himself*, is unavailing.[5]

Finally, Martínez' failure to meet the burden imposed by Rule 56 may not be excused because he was incarcerated during much of the period of this litigation. Martínez has been represented by counsel throughout this litigation and may not now refuge behind his (or his counsel's) failure to take any discovery during the several years of this litigation.[6] Moreover, the record does not reflect that Martínez had undertaken any discovery by oral examination, nor that he has requested time to obtain discovery pursuant to Rule 56(f). Under such circumstances, it would be manifestly unfair to deny Frito-Lay the summary judgment to which it is clearly entitled by the record, merely in order to accommodate Martínez' wish to evade still longer his obligation to repay Frito-Lay for the amounts he misappropriated from his former corporate employer.

As to the legal issues underlying Martínez' liability to Frito-Lay, Martínez raises virtually nothing not previously argued to (and addressed by) this Court, and, accordingly, no purpose would be served in

---

5. It is not without significance that Martínez must have had an opportunity to cross-examine himself (and other witnesses—including Mr. John Hozik—see *infra*) in connection with the related case of *Banco Popular de P. R. v. Frito-Lay of P. R., Inc. v. José Martínez Cañas, et al*, which, the instant file reflects, was tried in the Superior Court earlier this year. Yet, Martínez

has submitted nothing from that trial which would have any probative value.

6. Indeed, the law in this Circuit is clear that even a *pro se* litigant is not excused from the requirements of Rule 56. See *Mas Marques v. Digital Equipment Corp.*, 637 F.2d 24, 27 (1 Cir., 1980).

simply repeating what has already been said. A few additional comments are, however, appropriate with respect to certain of the arguments made by Martínez.

With respect to Frito-Lay's allegations, in its first cause of action that Martínez improperly caused Frito-Lay to make cash "advances" to a corporation owned and controlled by Martínez, which cash was thereafter misappropriated by Martínez and spent by him for his own personal expenses and acquisitions, the Court's earlier Opinion and Order amply demonstrates that Martínez has confirmed these allegations by his own admissions. While Martínez does not, in his Motion for Reconsideration, deny his earlier admissions or advance any reason why Frito-Lay is not entitled to the return of the money so appropriated, he does suggest that, since the "advances" were taken by Distribuidores Nacionales ("DN"), the corporate entity admittedly completely controlled by Martínez, Martínez cannot be held personally liable for those "advances". The short answer to that argument is, of course, that the record is replete with Martínez' admissions that DN was nothing other than Martínez' *alter ego*. Accordingly, there is no doubt that even if the "advances" were "taken" by DN (and, in any event, Martínez has admitted that it was he who arranged and benefited from all such advances), and particularly in view of the pervasive fraud involved here, Martínez should be held liable for DN's wrongful acts. See *Quiñones Rosa v. Fajardo Development Co.*, 90 P.R.R. 665 (1964); *South Porto Rico Sugar Corp. v. Sugar Board*, 88 P.R.R. 42 (1964); *J. E. Candal & Co. v. Rivera*, 86 P.R.R. 481 (1962); see also, e. g., *DeWitt Truck Brokers, Inc., v. W. Ray Flemming Fruit Co.*, 540 F.2d 681 (4 Cir., 1976); *G. M. Leasing Corp. v. United States*, 514 F.2d 935 (10 Cir., 1975), cert. den. 423 U.S. 1031, 96 S.Ct. 561, 46 L.Ed.2d 404 (1975); *Marks v. Polaroid Corp.*, 237 F.2d 428, 435 (1 Cir., 1956); *Dawson v. G. Malina, Inc.*, 463 F.Supp. 461, 472 (D.Mass., 1978).

With respect to the claims for other misappropriations characterized by Frito-Lay as "additional misappropriations" and dealt with in the Court's previous Opinion and Order at length, again Martínez raises no factual or legal impediment to Frito-Lay's recovery. The Court feels constrained to comment, however, on the merit of Martínez' counsel's claim, in his "Sworn Statement" accompanying the Motion for Reconsideration and in the body of the Motion, that the Court's consideration of these items was inappropriate because, notwithstanding Frito-Lay's demonstration that those claims had been treated by the parties as part of this litigation and had been the subject of discussion and correspondence between counsel, according to Martínez' counsel (Mr. Rua) he had not received any explanation, description or backup from Frito-Lay with respect to these claims. In this context, it is remarkable that annexed to Mr. Rua's "Sworn Statement" was a cover letter from Frito-Lay's counsel forwarding certain information to Mr. Rua and expressly confirming that *Mr. Rua* had indicated he did not wish to see additional information regarding these claims. Plainly, and as discussed in the previous Opinion and Order, Martínez may not preclude the Court from properly considering these claims on the ground that they were not technically included in Frito-Lay's amended complaint when it is clear that the parties have indeed treated these issues as part of this action and particularly when it is clear that, to the extent that Martínez is (if he is at all) ignorant as to the details of these claims, that is a result of Martínez own choice.

Finally, the Court must respond to Martínez' suggestion that some sort of impropriety is demonstrated by the Court's adoption of part or all of a draft Opinion and Order submitted by Frito-Lay. While Martínez cites *In Re Las Colinas, Inc.*, 426 F.2d 1005 (1 Cir., 1970) cert. den. 405 U.S. 1067, 92 S.Ct. 1502, 31 L.Ed.2d 797 (1972), for the proposition that "a clash of interest must be recognized to exist between efficient administration that leads hard pressed judges to turn to counsel for help and the undeniable right of losing counsel to be assured that his position has been thorough-

ly considered", there can be no doubt that this Court has independently and painstakingly considered Martínez' position. Furthermore, while Martínez insinuates that "the hastiness" of this Court's first decision was suspect, the fact of the matter is that a full month elapsed between the briefing of Frito-Lay's summary judgment motion[7] and the Court's decision. In any event, whatever Martínez' complaints about the February 12 Opinion and Order, the Court has once again carefully reviewed both parties' positions in connection with Martínez' Motion for Reconsideration, and has once again determined that Martínez has not met his burden of refuting Frito-Lay's showing that it is entitled to summary judgment. Accordingly, Martínez' Motion for Reconsideration[8] is DENIED.

### B. Martínez' Rule 60(b)(3) Motion.

Some four months after our February 12 Opinion and Order, and while his Motion for Reconsideration was still pending, Martínez filed a second motion, this one purportedly based upon Rule 60(b)(3), which provides relief from a judgment for "fraud * * * misrepresentation or other misconduct of an adverse party".

In that motion, Martínez refers the Court to certain purported discrepancies between the affidavit of John Hozik, submitted by Frito-Lay in support of its motion for partial summary judgment, and oral testimony given by Mr. Hozik in connection with the trial of two of the other actions pending in the Superior Court, San Juan Part, between Martínez and Frito-Lay. According to Martínez, Mr. Hozik's testimony in the Superior Court was to the effect that the total amount "advanced" by Frito-Lay was some $119,000, whereas Mr. Hozik's affidavit, relied upon by Frito-Lay and this Court in connection with Frito-Lay's summary judgment motion, states that Martínez and/or DN owe Frito-Lay a substantially greater amount.[9] The Court is of the view there is no inconsistency—much less fraud—between Mr. Hozik's affidavit and his testimony in the Superior Court for a comparison of the affidavit with the testimony reveals that the former addresses the total amount "advanced" by Frito-Lay during the period of Martínez' employment, without discussing any "repayments", whereas the latter appears to address only the amount "advanced" in 1977 *after* Martínez' "repayment" of $1,121,843.00.

In any event, even if there had been some sort of discrepancy between Mr. Hozik's testimony and his affidavit,[10] that alone would not justify setting aside this Court's earlier judgment under Rule 60(b)(3). There is no question that motions to open judgments pursuant to Rule 60(b)—includ-

---

7. Except for Martínez' "sur-reply" papers, which, as has been discussed, were untimely and were not considered by the Court.

8. In view of our holding that Martínez has not raised any substantial issues of law or fact, we see no purpose in holding a "hearing", as requested by Martínez, to "discuss" the Motion for Reconsideration. Martínez' Motion for Hearing is, therefore, also denied.

9. Martínez states, inaccurately, that Mr. Hozik's affidavit claims that the amount so owed is $932,743.84; the affidavit actually states that the amount which Martínez caused Frito-Lay to "advance" to DN from August 1972 through February 1977 in excess of the cost of merchandise purchased from DN, was $1,413,-743.47. Considering Martínez' opposition to Frito-Lay's motion for summary judgment, this Court observed that Martínez had *not* controverted Mr. Hozik's calculations, but it gave Martínez "credit" in the full amount he claimed to have "repaid" Frito-Lay from the proceeds of his "borrowing" from Banco Popular, except that it subtracted from the "credit" the amount which Banco Popular had already seized from Frito-Lay on account of those "borrowings". The net amount of our award to Frito-Lay on account of the "advances" was therefore $932,-743.84 (subject to increase if Frito-Lay is held liable to Banco Popular).

10. Any such discrepancy—which would, at most, affect only so much of this Court's judgment as dealt with the "advances"—might properly have been the subject of a motion under Rule 59(e); however, even if we were now to regard this motion as brought under Rule 59(e), it would be plainly untimely since it was served much more than ten days after entry of judgment, and hence may not properly be considered by this Court. *Morgan Guaranty Trust Co. of New York v. Third National Bank of Hampden County*, 545 F.2d 758, 760 (1 Cir., 1976).

ing motions alleging fraud under Rule 60(b)(3)—are addressed to the discretion of the Court. *Manning v. Trustees of Tufts College*, 613 F.2d 1200 (1 Cir., 1980); *Pagán v. American Airlines, Inc.*, 534 F.2d 990 (1 Cir., 1976). The burden of establishing fraud is on the movant, and relief from a judgment under this rule may be granted only when an application is clearly substantiated by adequate, convincing proof. See, e. g., *Jennings v. Hicklin*, 587 F.2d 946 (9 Cir., 1978); *Wilkin v. Sunbeam Corp.*, 466 F.2d 714 (10 Cir., 1972), cert. den. 409 U.S. 1126, 93 S.Ct. 940, 35 L.Ed.2d 258 (1973); *DiVito v. Fidelity and Deposit Co. of Maryland*, 361 F.2d 936 (7 Cir., 1966). See also *Geigel v. Sea Land Service, Inc.*, 44 F.R.D. 1 (D.P.R., 1968) (finality of judgments requires Rule 60(b) motions to be closely scrutinized).

 Moreover, in order to justify vacation of a judgment, movant under Rule 60(b) must also make a showing that he would have had a good defense to the main action. *Wilkin v. Sunbeam Corp., supra.* Certainly, a litigant may not use Rule 60(b) merely to relitigate the merits of his claim, and no different rule applies simply because the judgment sought to be vacated was a summary judgment. *Mastini v. American Telephone and Telegraph Co.*, 369 F.2d 378 (2 Cir., 1966); cert. den. 387 U.S. 933, 87 S.Ct. 2055, 18 L.Ed.2d 994 (1967). Here, the Court is bound to conclude that Martínez has made *no* showing of fraud. Moreover, even now Martínez has not demonstrated that Mr. Hozik's testimony—or anything else—raises any genuine issues of material fact. Accordingly, Martínez has plainly not shown any reason why this Court's judgment should be vacated and appears to be simply attempting to relitigate the motion for summary judgment which has already been decided against him. Martínez' Rule 60(b)(3) motion is DENIED.

**C. Frito-Lay's Motion for Amendment of Judgment.**

 In the previous Opinion and Order, the Court awarded Frito-Lay $932,743.84, plus interest, in damages on account of the "advances" alleged in Frito-Lay's first cause of action and described in Frito-Lay's motion; and $1,500,443.02, plus interest, on account of the "additional misappropriations" discussed in Frito-Lay's motion and in the Opinion and Order. However, the Court neglected to specify the amount of such prejudgment interest, and we hereby award 6% per annum on each of those items —viz., $153.33 per day with respect to the cash advances; and $246.66 per day with respect to the additional misappropriations—calculated from February 17, 1977 (when Martínez was fired by Frito-Lay)[11] up to and including the date the Clerk of the Court enters an amended judgment on this Order. In addition, we award prejudgment interest calculated at the same rate and from the same date in the amount of $38.48 per day with respect to our award of $234,054.33 on account of salary and bonuses forfeited by Martínez during the period in which he breached his fiduciary obligations to Frito-Lay. The total prejudgment interest award to Frito-Lay is, accordingly, $438.47[12] per day from February 17, 1977, up to and including the entry of the amended judgment.[13]

**D. Execution of the Judgment.**

 Some two and a half months after entry of judgment on this Court's February 12, 1981 Opinion and Order, Frito-Lay filed a verified request for an order requiring Martínez and his former wife, Elena Marta Méndez y Gutiérrez, to appear before the Court to show cause why the

---

**11.** While, under the circumstances of this case and in view of Martínez' obstinacy in this litigation, the award of prejudgment could properly have been calculated separately from the date of each misappropriation, we have chosen the later, February 17, 1977, date. Cf. Rule 44.3(b), P.R.R.C.P.

**12.** The Court finds the mathematical computation provided by Frito-Lay in its March 5, 1981, cross-motion for amendment of judgment adequate, particularly since Martínez has in no way challenged such computation.

**13.** A post-judgment 6% interest would also be applicable *ope legis*, to any unpaid balance of the judgment. 31 L.P.R.A. 4591.

conjugal partnership ("sociedad legal de gananciales") which existed throughout the period of Martínez' employment by Frito-Lay, and the succeeding conjugal estate, should not be bound by the judgment previously entered by this Court and why any property belonging to that estate and located in Puerto Rico should not be sold forthwith.[14] This Court thereafter issued an order, pursuant to rule 51.7 of the Puerto Rico Rules of Civil Procedure, and in accordance with general principles of notice and due process, ordering Martínez and Ms. Méndez, as co-owners of the conjugal estate, to appear at such a show cause hearing; the record shows that service was made upon Martínez by mail, and, as ordered by the Court, upon Ms. Méndez by personal service at her residence in Miami, Florida.

The show cause hearing was subsequently held. Ms. Méndez did not appear although she was represented by counsel who appeared and who confirmed that Ms. Méndez had been served with the Court's order.[15] Neither Martínez nor Ms. Méndez filed any written opposition to Frito-Lay's showing that they had been married during the years in which Martínez' defalcations occurred, and that the judgment entered by this Court constitutes a debt chargeable to the conjugal society and subject to execution against the conjugal estate. To the contrary, the testimony of Martínez, whom Ms. Méndez' attorney called as a witness, confirmed that although Ms. Méndez may not have participated personally in the misappropriations which resulted in the judgment outlined here, the conjugal estate certainly benefited from Martínez' salary (which was one of the items of damage included in the judgment); there was absolutely no evidence concerning whether or not the conjugal society benefited from the remainder of the transactions which were the subject of our February 12 Opinion and Order. Ms. Méndez having been given proper notice of the hearing, and having failed to meet *her* burden to show cause why she should not be bound by the judgment, (Rule 51.7 P.R.R.C.P.) there is no equitable reason why she should not be bound by the instant Order.

■ As a matter of law, it is clear that Martínez' liabilities and debts to Frito-Lay, which were incurred while he was married to Ms. Méndez, may properly be charged to the conjugal estate which has replaced the conjugal partnership which existed during their marriage and which was jointly liable with Martínez for his debts. Article 1308 of the Civil Code of Puerto Rico [16] provides that the debts and obligations incurred by either spouse during a marriage are chargeable to the conjugal partnership, which is an entity *sui generis*, separate and distinct from the individuals who compose it. 31 L.P.R.A. 3661. See generally, 31 L.P.R.A., Sections 3621, et seq.; *Torres v. W.R.A.*, 96 P.R.R. 634 (1968); *Rovira Tomas v. Secretary of the Treasury*, 88 P.R.R. 168 (1963).

**14.** While Frito-Lay did not concede that any of the property against which it sought execution was community property, or that Ms. Méndez has any valid interest in that property, Frito-Lay indicated that it was instituting this proceeding in order to, *inter alia*, give adequate notice to Ms. Méndez concerning execution and bind her to the extent of the community property interest which she had claimed in other, related litigation involving Martínez.

**15.** Ms. Méndez' attorney's claims that this Court had no power to subpoena Ms. Méndez as a witness and that Frito-Lay was required to provide Ms. Méndez with witness and travel fees are irrelevant. As indicated above, Ms. Méndez was ordered to appear not as a witness for Frito-Lay, but in order to giver her fair notice and an opportunity to be heard in her own interest with respect to enforcement of a judgment. Rule 51.7 of the Puerto Rico Rules of Civil Procedure, made applicable here by F.R.C.P. 69(a), clearly authorizes the mechanism employed by the Court to bring Ms. Méndez into these proceedings.

**16.** There is no question that the law of Puerto Rico governs the practice and procedure to be followed by Frito-Lay with respect to enforcing the judgment previously entered here, including the determination of the nature, extent and manner of executing the judgment. See F.R. C.P. 69(a). And see, e. g., *Gabovitch v. Lundy*, 584 F.2d 559 (1 Cir., 1978); *United States v. Miller*, 229 F.2d 839 (3 Cir., 1956); *Hamilton v. MacDonald*, 503 F.2d 1138, 1148 (9 Cir. 1974); *Hayes v. Schaefer*, 399 F.2d 300 (6 Cir., 1968); *Schram v. Spivack*, 68 F.Supp. 451 (D.C.Mich., 1946).

■ Moreover, the Supreme Court of Puerto Rico has indicated that the conjugal partnership's liability for the obligations incurred by one of its members—even obligations arising out of one member's tortious actions, provided the conjugal partnership benefits economically from the action—is not merely several, but joint. See *Lugo Montalvo v. González Mañón*, 104 D.P.R. 372 (1975).[17] Similarly, other civil law courts have made both the community and its members liable for the actions of one spouse whose actions are imputable to the conjugal community. See *Audobon Insurance Co. v. Knoten*, 325 So.2d 624 (La.Ct. App., 4 Cir., 1976); *Valence v. State*, 280 So.2d 651 (La.Ct.App., 10 Cir., 1973); *Johnson v. Johness*, 145 So.2d 588 (La.Ct.App., 1962); *Vail v. Spampinato*, 238 La. 259, 115 So.2d 343 (1959). Such holdings reflect the growing trend toward broadening joint obligations in civil legal systems. See, e. g., Compendio de Derecho Civil Español, Vol. 3, pp. 78–81 (1970); Sancho Rebullida, Estudios de Derecho Civil en Honor del Profesor Castán Tobeñas, Vol. 3, p. 571 (1969); Castán, Derecho Civil Español, Común y Foral, Vol. 3, p. 104 (1967).

■ Since the law presumes that all the property of a marriage is considered as partnership property unless proven by strong, convincing evidence to belong exclusively to one spouse (31 L.P.R.A. 3647; *Alum v. Registrar*, 37 P.R.R. 753 (1928); *Arroyo v. Vicario*, 28 P.R.R. 753 (1920), all the partnership assets are subject to the debts and obligations of either spouse. *Vivaldi v. Mariani*, 10 P.R.R. 420 (1906). Accordingly, since there is no doubt that Martínez was married to Ms. Méndez during the period in which Martínez' debts to Frito-Lay were incurred, the conjugal partnership and its property are liable to Frito-Lay, together with Martínez, and Frito-Lay is entitled to execute upon any such property. See *Lugo Montalvo v. González Mañón, supra; National City Bank v. De La Torre*, 54 P.R.R. 219 (1937); aff'd. 110 F.2d 976 (1 Cir., 1940), cert. den. 311 U.S. 666, 61 S.Ct. 24, 85 L.Ed. 428 (1940).[18]

WHEREFORE, in view of the foregoing, it is hereby ORDERED that Martínez' Motion for Reconsideration, pursuant to Rule 59(e) F.R.C.P., is DENIED; and

IT IS FURTHER ORDERED that Martínez' Motion for Relief from judgment, pursuant to Rule 60(b)(3) F.R.C.P., is DENIED; and

IT IS FURTHER ORDERED that Frito-Lay's Cross-Motion for Amendment of Judgment, is GRANTED; and Frito-Lay is awarded prejudgment interest at the rate of 6% per annum, to be calculated from February 17, 1977, up to and including the date the Clerk of the Court enters an amended judgment on this Order, such interest to be calculated with respect to each of the elements of damage awarded in our Opinion and Order of February 12, 1981, as further specified hereinabove, for a total of $438.47 in interest per day; and

---

17. *Sepúlveda v. Maldonado Febo*, 79 JTS 30 (1979), the only other case cited by counsel for Ms. Méndez at the hearing held herein is plainly distinguishable. In *Sepúlveda*, the Court held that the conjugal society was not primarily liable in damages to the family of a man shot and killed by defendant because defendant was solely responsible for the illegal act, *and* because the conjugal society derived no economic benefit therefrom. (The conjugal society was, in any event, subsidiarily liable under Article 1310 of the Civil Code.) Here, the Court must presume that the community did benefit from Martínez' misappropriation of several million dollars from Frito-Lay; this presumption is buttressed by Ms. Méndez' total failure to show anything to the contrary, and by Mr. Martínez' own testimony, discussed in our earlier Opinion and Order, that at least the money "advanced" to DN was used by Martínez to pay for expenses (such as his children's tuition), which were clearly of benefit to the conjugal society.

18. Frito-Lay's right to execute against partnership property is not diminished by the fact that the Martínez-Méndez conjugal partnership ceased to exist upon their divorce, for their conjugal estate thereafter became an estate commonly owned by the former spouses (see *Vega v. Tossas*, 70 P.R.R. 308 (1949) and the former partnership's creditors may satisfy debts owed by the partnership or its members out of the community property. Cossio y Corral, Tratado Práctico y Crítco de Derecho Civil, Vol. I, "La Sociedad Legal de Gananciales", p. 243 (1963); La Cruz Berdejo, Derecho de Familia, pp. 227, 229 (1966).

IT IS FURTHER ORDERED that Frito-Lay may proceed forthwith to execute the judgment heretofore entered against any private property belonging to Martínez, as well as any property belonging to the conjugal estate of Martínez-Méndez; and

IT IS FURTHER ORDERED that there being no just reason for delay, the Clerk of the Court shall, forthwith, enter Judgment for the aforesaid amount of prejudgment interest and otherwise in accordance with this Order.[19]

IT IS SO ORDERED.

---

**19.** In view of our present decision, Martínez' request for a stay of execution pending the Court's determination of Martínez' Rule 59(e) and Rule 60(b)(3) motions, is rendered moot.