

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-22-2003

# Palm Bay Imports Inc v. Miron

Precedential or Non-Precedential: Non-Precedential

Docket 01-4275

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Palm Bay Imports Inc v. Miron" (2003). *2003 Decisions*. Paper 867.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/867

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 01-4275

_____

PALM BAY IMPORTS, INC.,

Appellant,

v.

EMANUEL MIRON; PIETRO CAVALLO and
PARLIAMENT WINE CO.,

Appellees.

_____

On Appeal from the United States District Court
for the District of New Jersey
(No. 99-cv-5178)
District Judge: The Honorable Dickinson R. Debevoise

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 10, 2002

Before: FUENTES, GARTH, Circuit Judges, WALLACH,* Judge

(Opinion Filed: January 22, 2002 )

_____

* The Honorable Evan J. Wallach, United States Court of International Trade, sitting by
designation.

---

OPINION OF THE COURT

---

FUENTES, <u>Circuit</u> <u>Judge</u>.

After losing an exclusive importation arrangement to a rival, plaintiff Palm Bay Imports, Inc. ("Palm Bay") filed an action in District Court asserting claims of (1) improper disclosure of confidential information, (2) unlawful use of confidential trade information, (3) tortious interference with contractual relations, and (4) tortious interference with prospective economic advantage. Defendants Parliament Wine Company ("Parliament"), Emanuele Miron ("Miron"), and Pietro Cavallo ("Cavallo") (collectively, "Defendants") moved for summary judgment as to all claims. Palm Bay now appeals the grant of summary judgment in favor of defendants. We agree with the District Court that Palm Bay failed to sustain its burden of raising a genuine issue of material fact as to any one of its grounds for relief. Accordingly, we will affirm the judgment of the District Court.[1]

**I.**

Palm Bay is in the business of importing wines and spirits to the United States and neighboring territories. David S. Taub ("Taub"), President of Palm Bay, is also President of Gallo Wine Distributors LLC d/b/a Premier Wine and Spirits ("Premier"), a wholesale

---

[1] The order accompanying the District Court's decision granted summary judgment for the defendants and then dismissed the complaint. App. at A-1. "Because the grant of summary judgment and the dismissal of the complaint are inconsistent, we will disregard reference to the 'dismissal' of Cheminor's complaint and treat the record as a summary judgment record." <u>Cheminor Drugs, Ltd. v. Ethyl Corp.</u>, 168 F.3d 119, 121 n.2 (3d Cir. 1999).

distributor of wine in the greater New York City metropolitan area and a substantial customer of Palm Bay. Co-defendant Miron was an employee of Palm Bay from 1989 to 1998. Prior to his employment with Palm Bay, Miron had substantial experience in the wine trade, at one point running his own import company.[2] Prior to 1998, co-defendant Cavallo was an employee of Premier.

The controversy on appeal centers around the importation of wine from the region of Tuscany in Italy, specifically from the Fattoria dei Barbi ("Barbi"), a wine estate in the town of Montalcino. Barbi is controlled by the Colombini family. In 1988, the Colombini matriarch, Francesca Colombini ("Francesca") transferred ownership of Barbi to a corporation called Barbi S.r.L., which in turn was owned by Francesca and her two children Donatella and Stefano Colombini. Barbi S.r.L. then leased back to Francesca the right to produce wine at the estate using the brand name Fattoria dei Barbi. Barbi S.r.L., in addition to its role as a family holding corporation, was also a bottler of not only Barbi wines, but also wines produced by Stefano and Donatella. For instance, Stefano produced a Morellino wine from vineyards outside of Barbi, which was bottled by Barbi S.r.L.

Taub met Francesca and Stefano during a May 1995 trip to Italy. Although Palm Bay was not importing any Barbi wines at that time, Taub realized that Barbi was looking for a new

---

[2] Palm Bay's conclusory assertion that "[b]efore joining Palm Bay, Miron had little or no experience in marketing, pricing, use of point sale materials and gross profit margin considerations" is unsupported by the record. Appellant's Brief, at 4. In addition to running his own import business, Miron worked for other import companies and had almost 18 years of experience in the wine trade prior to his employment with Palm Bay.

3

United States importer. When Francesca and Stefano exhibited their familiarity with Miron, Taub requested that Miron travel immediately to Italy to assist in negotiations. A rough draft of an agreement was sketched by the parties. Thereafter, in August 1995, Palm Bay and Barbi reached an agreement (the "Palm Bay Agreement") in which Palm Bay would be the exclusive importer of Barbi wines in the United States, Puerto Rico, the Bahamas, and Alberta, Canada for the period from August 15, 1995 to December 31, 1999. Although the Palm Bay Agreement contained an automatic renewal provision, it was also subject to cancellation, provided that either party canceled, in writing, six months prior to the Agreement's expiration.

Among other things, the parties disagree on the scope of the Palm Bay Agreement. Palm Bay contends that the contract encompasses all wines bearing the Barbi name and brand, without distinction between Barbi and Barbi S.r.L. Consequently, Palm Bay believes that the Morellino wine produced by Stefano was part of the portfolio of Barbi wines for which it had exclusive importation rights. Defendants contend, however, that the Morellino was not a Barbi wine, but rather a wine produced at Scansano, Italy. They argue that the fact that it was bottled by Barbi S.r.L. would not convert an otherwise non-Barbi wine into one covered by the Palm Bay Agreement.[3]

A few years after the Palm Bay Agreement was entered into, around January or February 1998, Palm Bay contends that Defendants began a course of conduct that triggered the present action. In early 1998, Miron met the President of Parliament, Jonathan Shiekman

---

[3] Palm Bay concedes that it "never wrote to Barbi to enforce Palm Bay's right to import the Morellino . . . ." Appellant's Brief, at 7.

("Shiekman"), through a mutual acquaintance, Patrick Botten ("Botten"). Shiekman and Miron allegedly explored the possibility of Miron leaving Palm Bay to work for Parliament. In a correspondence dated March 27, 1998, the possibility of Miron working for Parliament was again discussed. Then, in April 1998, Palm Bay contends that Defendants and Barbi representatives met at VinItaly, an annual gathering attended by various participants in the wine trade. At VinItaly, representatives of Barbi and Parliament discussed a possible exclusive importation agreement to replace Barbi's existing contract with Palm Bay.[4] Unbeknownst to Palm Bay, Stefano was already considering five or six new importers to replace it. Furthermore, Miron approached Barbi and other wine producers in Italy and requested that he be designated their agent.

Communications between Shiekman, Miron, and the owners of Barbi continued into the Summer of 1998, when Parliament and Barbi reached an agreement for the importation of Barbi wine exclusively by Parliament. Around July 1998, Miron retired from Palm Bay and began working for Parliament as a consultant. It appears that a formal agreement (the "Parliament Agreement") was entered into on September 15, 1998. The Parliament Agreement was scheduled to commence upon the termination of the Palm Bay Agreement, except that it provided for the immediate importation of Stefano's Morellino wine which was not considered to be covered under the Palm Bay Agreement. Shortly thereafter, Cavallo resigned from Premier and began working for Parliament in January 1999. Also in January 1999, Stefano

---

[4] Although Stefano, Botten, and Shiekman recall seeing Miron in Italy around the time of VinItaly 1998, Miron denies attending.

advised Palm Bay that he would be selling his Morellino through Parliament, as it was his wine.

When the Parliament Agreement was entered into, the Palm Bay Agreement was, of course, still in effect. Although the parties do not dispute that the Palm Bay Agreement was carried out for its stated term before a valid cancellation, Palm Bay nevertheless argues that Defendants conspired in various ways to effect an early termination of the Palm Bay Agreement and to effect a non-renewal of the Agreement. For example, Palm Bay contends that Miron "substantially over-ordered a dramatically less-saleable Barbi wine known as Brigante . . . ." Appellant's Brief, at 10. Similarly, Palm Bay asserts that Barbi reduced its allotment of premium Brunello wine. Notwithstanding these allegations, the record is clear that the Palm Bay Agreement was not terminated prior to its stated term ending December 31, 1999.

In addition, Palm Bay claims that in the conversations leading up to the Parliament Agreement and Miron's departure from Palm Bay, Defendants disclosed and continue to use confidential and proprietary information relating to Palm Bay's marketing strategies, pricing, and sales approach.

Finally, by letter dated June 7, 1999, Francesca notified Palm Bay of its intent to cancel their exclusive importation agreement at the end of the year. Parliament began importing Barbi wines in 2000.

**II.**

Our review of the District Court's grant of summary judgment is plenary. See Doe v. County of Centre, PA, 242 F.3d 437, 446 (3d Cir. 2001). We are obliged to apply the same

standard applicable in the District Court. See id. Rule 56(c) of the Federal Rules of Civil Procedure directs that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The Court must construe the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. McCarthy v. Recordex Serv., Inc., 80 F.3d 842, 847 (3d Cir. 1996).

As a threshold matter, the party moving under Rule 56(c) must show that there is an absence of evidence to support the non-moving party's claims for relief. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant meets its threshold burden, the burden then shifts to the party opposing the motion to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). As the Supreme Court stated, "the requirement is that there be no genuine issue of material fact," that is, "facts that might affect the outcome of the suit under the governing law . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (emphasis in original).

In addition, the parties are at odds over an evidentiary issue relating to the admissibility of deposition testimony in the context of Rule 56 motion practice. Palm Bay contends that Rule 32 precludes Defendants from using their own deposition testimony as evidence in support of their motion. See Fed. R. Civ. P. 32; Appellant's Brief, at 14-15 n.5. In support of its contention, Palm Bay cannot cite to any relevant precedent from this Court and relies entirely on Frito-Lay of Puerto Rico, Inc. v. Canas, 92 F.R.D. 384, 391 (D.P.R. 1981).

7

In Frito-Lay, defendant moved for reconsideration of the District Court's grant of summary judgment in favor of plaintiff. In response to defendant's argument that because plaintiff had introduced portions of his deposition the court should have accepted all of his deposition testimony, the District Court stated: "whereas the deposition of an adverse party may be used for any purpose, it is clear that a party's own deposition is not admissible, except under circumstances not pertinent here." Id. (citing Fed. R. Civ. P. 32(a)(2), (3)).

Palm Bay misconstrues the import of this isolated statement taken out of context. In the very next sentence, the court recognizes that:

> More important, although [defendant] suggests that his deposition testimony taken as a whole indicates disputes as to material facts, [defendant] has not specifically referred the Court to any such disputes . . . as would be his obligation if Martinez sought to introduce additional parts of his deposition which he claimed ought in fairness to be considered with the parts introduced by Frito-Lay, pursuant to Rule 32(a)(4).

Id. at 391-92 (citations omitted) (emphasis added). It is clear from the complete passage that the Frito-Lay court was not attempting to fashion a blanket rule on the impermissibility of a party using its own deposition testimony in the context of a Rule 56 motion. We find a more sensible approach in Tormo v. Yormak, 398 F. Supp. 1159, 1168-69 (D.N.J. 1975). In Tormo, the Court found that courts "have rejected the notion that [Rule 32] governs the use of deposition testimony at a hearing or a proceeding at which evidence in affidavit form is admissible. The reasoning behind this rejection is that deposition testimony taken under oath, even if failing to satisfy Rule 32(a)'s requirements, is at least as good as affidavits." Id. (internal quotations and citations omitted).

Learned commentators agree. See 8A WRIGHT, MILLER & MARCUS, FEDERAL

PRACTICE AND PROCEDURE: CIVIL 2D, § 2142, at 164 (1994) ("In addition, Rule 56(c) specifically allows depositions to be considered on a motion for summary judgment. Indeed depositions can be used more freely on motions than [Rule 32] would seem to indicate. A deposition is at least as good as an affidavit and should be usable whenever an affidavit would be permissible, even though the conditions of the rule on use of a deposition at trial are not satisfied."). Accordingly, we find no support for Palm Bay's contention that Defendants should be precluded from relying on their own deposition testimony in support of their motion for summary judgment.

## III.

### A.

As regards its first claim of unlawful disclosure of confidential information brought against Miron and Cavallo, Palm Bay asserts, in essence, a breach of an implied contract. The courts of New Jersey have recognized a duty of loyalty which an employee owes to his employer and which "prohibits the employee from taking affirmative steps to injure the employer's business." Lamorte Burns & Co., Inc. v. Walters, 770 A.2d 1158, 1169-70 (N.J. 2001). Furthermore, the duty of loyalty requires an employee to refrain from disclosing or otherwise using an employer's confidential information against it. See Platinum Management, Inc. v. Dahms, 666 A.2d 1028, 1042 (N.J. Super. 1995).

Nevertheless, the District Court held that "Palm Bay fails to identify any evidence that Miron or Cavallo provided any confidential information to Parliament." Palm Bay Imports, Inc. v. Miron, Civ. No. 99-5178, slip op. at 11 (D.N.J. Nov. 7, 2001) (the "Decision"). We

9

agree. In fact, the only evidence upon which Palm Bay relies to substantiate its claim pertains to Miron's training in Palm Bay's "pricing, profit margins and the use of point of sale materials" and to Cavallo's "access to and knowledge of Palm Bay's marketing, strategies and procedures . . . ." Appellant's Brief, at 33. From these obvious and rather innocuous facts, Palm Bay draws the wholly unsupported inference that "this marketing and pricing information was necessary to enable Parliament to begin its operations as Barbi's importer since Parliament was basically no more than an importer of Kosher and French wines." Id. First, this Court fails to see how mere access to confidential information conclusively supports a claim of unlawful disclosure. Second, Palm Bay's failure is even more fundamental: to the extent that its claim is premised on disclosure of confidential business information, it cannot identify with any degree of specificity the information actually disclosed.

Palm Bay's second claim fails for the same reason. Palm Bay asserts that Parliament, Miron, and Cavallo used confidential business information to compete unfairly with Palm Bay. However, having failed to identify any confidential information disclosed by any defendant, the District Court properly granted summary judgment as to Palm Bay's first and second claims.

**B.**

Palm Bay's third claim alleges Defendants' tortious interference with contractual relations, based on Parliament's agreement with Stefano to begin importing the Morellino wine immediately upon the signing of their exclusive importation contract. To prevail on a claim of tortious interference with contractual relations, Palm Bay must show: "(1) the existence of the contract (or the prospective economic relationship); (2) interference which was intentional

10

and with malice; (3) the loss of the contract or prospective gain as a result of the interference; and (4) damages." Velop, Inc. v. Kaplan, 693 A.2d 917, 926 (N.J. Super. 1997) (citing Printing Mart-Morristown v. Sharp Electronics, 563 A.2d 31 (N.J. 1989)).[5]

The District Court held that Palm Bay had failed to sustain its burden on the first element. We agree. After reviewing the record, the District Court concluded that there was no genuine issue regarding the fact that the Palm Bay Agreement was expressly limited to Barbi wines. The fact that a wine produced at another vineyard was bottled by Barbi S.r.L. could not transform a non-Barbi wine into one covered by the Palm Bay Agreement. The fallacy of Palm Bay's argument is evident in the inconsistency of its contractual interpretation with its actual practices. If its interpretation of the Agreement is correct, then Palm Bay had an exclusive contractual right to import any wine from the Colombini Family bearing the Barbi name. In actuality, Palm Bay never sought to import any wines from Donatella and even concedes that wines produced by Francesca's husband at Fattoria dei Colle were not part of the Palm Bay Agreement. Furthermore, Palm Bay concedes that it never even asserted its right

---

[5] Although Palm Bay's third claim hinges on an interpretation of the Palm Bay Agreement and although that Agreement had an unambiguous choice of law clause designating the laws of Italy as governing the Agreement, none of the parties raised any differences between the relevant Italian contract law and New Jersey contract law. Thus, the District Court construed the Agreement under New Jersey state law, and the parties do not assert any error in that regard. Noting that none of the parties to this appeal attempted to determine the relevant Italian law pursuant to Rule 44.1 of the Federal Rules of Civil Procedure, we similarly apply New Jersey contract law. See Walter v. Netherlands Mead N.V., 514 F.2d 1130, 1137 n.14 (3d Cir.), cert. denied, 423 U.S. 869 (1975). In any event, the party most propitiously situated to assert the choice of law provision – that is, Barbi – is not a party to this action.

to import the Morellino.[6]   Palm Bay's argument that a wine's "bottler" is synonymous with a wine's "producer" is similarly unpersuasive.   Palm Bay admitted in its answer to interrogatories that it never marketed wines by referring to the identity of the bottler, and moreover, according to Palm Bay's own witness, the identity of the bottler is not always the same as the producer.

Palm Bay insists that there is a genuine issue of material fact relating to the actual parties to the Palm Bay Agreement.   Specifically, it believes that Barbi and Barbi S.r.L. were essentially interchangeable, thus supporting Palm Bay's right to import the Morellino.   After reviewing the Palm Bay Agreement, however, we agree with the District Court that the plain text of the Agreement fails to support Palm Bay's interpretation.   There is simply no mention of Barbi S.r.L. in either the preamble setting forth the parties to the contract or Article 1.1, the key exclusivity provision.   For these reasons, we will affirm the District Court's grant of summary judgment on Palm Bay's third claim for tortious interference with contractual relations.

## C.

Palm Bay's fourth and final claim on appeal alleges tortious interference with prospective economic advantage, based ostensibly on the loss of the renewal of the Palm Bay

---

[6]   Although we agree entirely with the District Court's reasoning as to Palm Bay's third claim, we note in passing that the fact that Palm Bay never formally asserted its purported right to import the Morellino casts substantial doubt on the viability of the claim with respect to the other elements.   For instance, without a clear and unambiguous assertion of a "right" to import the Morellino, we question whether (1) Defendants interfered with malice, or (2) Palm Bay could prove damages.

Agreement. Palm Bay contends that it raised genuine issues of material fact as to this claim based on (1) the efforts of Miron and Shiekman to capture the exclusive importation arrangement even though Barbi was purportedly content with Palm Bay's work; (2) Miron's alleged order of excess Brigante wine that was not easily marketable; (3) his failure to order enough premium Brunello wine; (4) a meeting involving Shiekman, Miron, and representatives of Barbi in which an agreement in principle was reached on the Parliament contract; and (5) an exchange of correspondences discussing ways to effect an early termination of the Palm Bay Agreement.

The District Court correctly noted that in order to prevail on its fourth claim, Palm Bay was required to prove: "(1) that it had an existing contract or reasonable expectation of economic benefit or advantage; (2) that the defendant knew of the contract or expectancy; (3) that the defendant wrongfully interfered with that contract or expectancy; (4) that it is reasonably probable that the loss of the contract or prospective economic gain was a result of the interference; and (5) that damages resulted from the interference." Decision, at 15-16 (citing Florian Greenhouse, Inc. v. Cardinal IG Corp., 11 F. Supp. 2d 521, 525 (D.N.J. 1998)).

At the outset, the District Court reviewed Palm Bay's evidentiary bases for its fourth claim and held that the record overwhelmingly contravened Palm Bay's assertions. First, although Palm Bay claims that Barbi was pleased with its efforts, the record clearly reflects that Barbi had already been considering as many as five other importers to replace Palm Bay. As the District Court noted, Parliament's efforts to secure the exclusive dealing arrangement could not be construed as anything more than healthy, vigorous competition. Second, while

13

Palm Bay believes that Miron ordered excess quantities of an unmarketable Brigante, the record reflects that the Brigante received strong reviews and was selling well in California. Third, Palm Bay invites the Court to find that pursuant to his devious plan, Miron did not order enough premium Brunello that Palm Bay had success in distributing. The evidence showed, however, that there was no such devious plan, but rather the reduction in Palm Bay's allotment resulted from Barbi's allocation of a portion of the Brunello to Donatella. Furthermore, although there were correspondences and meetings between Shiekman, Miron, and Stefano, some of which concerned ways to terminate the Palm Bay Agreement, it is undisputed that neither Defendants nor Barbi chose to cancel the Agreement.

On these grounds, the District Court held that Palm Bay could not meet its burden with respect to the fourth element of the <u>Florian</u> test. Simply put, Palm Bay cannot show that absent the alleged interference, there was a reasonable probability that it would have received the anticipated economic benefits or advantages. While it is true that Palm Bay has exposed differences of opinion as to certain factual events, those differences do not rise to the level of genuine issues of material fact as to the governing law.

We also agree that this case is distinguishable from <u>Wear-Ever Aluminum, Inc. v. Townecraft Industries, Inc.</u>, 182 A.2d 387 (N.J. Super. Ch. Div. 1962). In that case, defendant's midnight raid of approximately 78 employees of plaintiff simply does not compare to the negotiation of the Parliament Agreement at issue here. In sum, the District Court properly granted Defendants' motion for summary judgment as to Palm Bay's fourth claim of tortious

14

interference with prospective economic advantage.[7]

## IV.

For the foregoing reasons, we will AFFIRM the judgment of the District Court.

---

[7] We also agree with the District Court that Palm Bay's claims, that Miron and Cavallo wrongfully diverted business and customers from Palm Bay to Parliament, are without merit. Again, Palm Bay has failed to present a triable issue as to whether it enjoyed a reasonable probability that Barbi would have renewed the Palm Bay Agreement.

_____

TO THE CLERK OF COURT:

Kindly file the foregoing opinion.

By the Court,

 /s/ Julio M. Fuentes

Circuit Judge