**The UNITED STATES, Appellant,**

v.

**SORTEX CO. OF NORTH AMERICA, INC., Appellee.**

**Appeal No. 78–14.**

United States Court of Customs and Patent Appeals.

March 29, 1979.

---

Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., David M. Cohen, Branch Director, Sheila N. Ziff, New York City, for the U. S.

Barnes, Richardson & Colburn, Steven P. Sonnenberg, Chicago, Ill., for appellee.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE, and MILLER, Judges.

LANE, Judge.

This appeal is from the judgment of the United States Customs Court, 80 Cust.Ct. 134, C.D. 4746, 453 F.Supp. 644 (1978), which sustained the importer-appellee's claim that at the time of importation the imported merchandise, electronic color sorting machines, were chiefly used as industrial machinery for preparing and manufacturing food for human consumption, and therefore, are more specifically provided for under item 666.25 of the Tariff Schedules of

the United States (TSUS) as modified by Presidential Proclamation 3822, T.D. 68–9, 32 F.R. 19002 (1967) (hereinafter referred to as TSUS item 666.25), as other industrial machinery for preparing and manufacturing food or drink, than under item 712.49 of the TSUS as modified by Presidential Proclamation 3822, supra (hereinafter referred to as TSUS item 712.49), as other electrical measuring, checking, analyzing, or automatically controlling instruments and apparatus. We affirm.

## Background

### Imported Merchandise

The importations involved herein consist of merchandise known as Sortex Models 964 and 964C Electronic Color Sorting Machines. These machines sort objects by passing them single file through optical chambers, where electronic photosensors compare their color to a pre-set background. When an object does not approximate the predetermined color, it is separated from the stream of acceptable product by an electronically-triggered air blast.

### Competing TSUS Provisions

This merchandise was imported into the United States in January 1974, and assessed with duties of 10% ad valorem under TSUS item 712.49:

(a) Electrical measuring, checking, analyzing, or automatically controlling instruments and apparatus, and parts thereof:

 * * * * * *

 Other

 * * * * * *

712.49 Other ............... 10% ad val.

The importer protests that at the time of importation the merchandise was chiefly used as industrial machinery for preparing and manufacturing food, and therefore is more specifically provided for in TSUS item 666.25:

(b) Industrial machinery for preparing and manufacturing food or drink, and parts thereof:

 * * * * * *

666.25 Other ................. 5.5% ad val.

### Evidence Presented at Trial

The importer's chief witness, Daniel Garnett, an engineer with ten years' experience in the development, application, installation and marketing of these machines, testified with regard to the installation and use of all 86 Sortex model 962[1] and 964 machines imported into the United States over a period of several years up to January 1974. Garnett testified and the Government agreed to stipulate that:

46 machines were used in sorting bulk products such as beans, peanuts, cracked corn and corn which were sold in large quantities after the sorting operation;

14 machines were used to sort food items in a processing line which resulted in a packaged labeled product, such as peanut butter;

1 machine was used to sort peanuts that were either used for seed or sold in bulk;

2 machines were used to sort shelled, cleaned peanuts which were put into bulk bags;

7 machines were used to sort roasted, blanched peanuts;

5 machines were used to sort seed for planting purposes;

3 machines were used to sort plastics and and minerals;

3 machines were not in use; and

5 machines Garnett had no personal knowledge of.

Garnett also testified, and the Government did not dispute, that the products sorted and sold in bulk (i. e., the food these machines were chiefly used on) had to meet either federal or state grading standards for marketing.

---

1. It was stipulated that the model 962 machine is the same as the model 964 machine which superseded it in production.

Garnett attempted to testify about machines of the same class or kind as the Sortex 962 and 964. However, the Government objected to this line of testimony. This objection was sustained on the ground that such testimony had no relevance to this case.

### Decision Below

The Customs Court took as its starting point a modification of our definition of the word "prepared" in the tariff sense as related to food, i. e., that the food has been so processed as to be changed in character or advanced in condition and made more valuable for its intended use. *Stone & Downer Co. v. United States*, 17 CCPA 34, 36, T.D. 43323 (1929). (The phrase "changed in character" is not found in the *Stone & Downer* definition.) The court concluded that the chief use of the Sortex color sorters was as industrial machines for preparing and manufacturing food by sorting, grading and screening food items for human consumption. The court noted that the 1969 *Summaries of Trade and Tariff Information*, while not controlling, listed among machines covered by TSUS item 666.25, machines which sort, grade, and screen, precisely what the machines in question did. As between TSUS item 666.25, other industrial machinery for preparing and manufacturing food or drink, and TSUS item 712.49, other electrical measuring, checking, analyzing, or automatically controlling instruments and apparatus, the court determined that the former more specifically provides for the Sortex color sorters. Accordingly, the court entered judgment in favor of plaintiff-importer.

### Issues Raised on Appeal

In this appeal, the Government contends that the Customs Court decision that the imported machines fall within the ambit of TSUS item 666.25 is erroneous.[2] The Government makes three separate arguments in support of this contention. It argues: (1) The machines were not chiefly used to "prepare . . . food" within the *Stone & Downer* definition of that term; (2) the machines were not chiefly used on line in a manufacturing process and therefore are not industrial machinery for manufacturing food or drink; and (3) the importer has not proven that electronic color sorters *of the class or kind* to which the importations belong were chiefly used in preparing and manufacturing food or drink.

### OPINION

#### I

In support of its position that the Sortex color sorters do not fall within the modified *Stone & Downer* definition of the phrase "preparing . . . food," i. e., do not change the character of the food or advance it in condition and make it more valuable for its intended use, the Government cites *Bruce Duncan Co., Inc. A/C Staalkat of America, Inc. v. United States*, 67 Cust.Ct. 430, C.D. 4312 (1971). That case involved Staalkat egg handling machines which sorted by weight, candled, graded, and marked eggs. The Customs Court held that the Staalkat egg handlers were not industrial machinery for preparing food, as defined in *Stone & Downer*, and therefore did not fall within TSUS item 666.25.

Although we agree with the Government that the Sortex color sorters and the Staalkat egg handlers perform very similar functions, we nevertheless conclude that the Customs Court's rationale for holding as it did in *Staalkat* is not applicable to the case at bar. In *Staalkat*, the Customs Court's decision is based on its conclusion that the Staalkat egg handler "merely processes for marketing food that is ready for consumption." 67 Cust.Ct. at 435. This is not the case with the chief use of the Sortex color sorters. All of the products sorted and sold in bulk (i. e., the food these machines were chiefly used on) had to meet either federal or state grading standards for marketing.

---

**2.** The Government does not press its contention that, assuming TSUS item 666.25 applies to the imported merchandise, TSUS item 712.- 49, nonetheless, more specifically describes the machines.

Thus, it is clear that prior to operation of the Sortex color sorters, the food was not ready for consumption.

 By separating out defective food particles and foreign substances, the Sortex color sorters upgraded the quality of the commodity sorted, enabling it to meet federal and state grading standards. This constituted a change in the character of the food. A bushel of unacceptable, low-grade corn or peanuts was converted into a bushel of acceptable, higher-grade corn or peanuts. In this way the Sortex color sorter advanced the agricultural commodity in condition and made it more valuable. For this reason we agree with the Customs Court that at the time of importation the Sortex color sorters were chiefly used as industrial machinery for preparing and manufacturing food.

## II

The Government also argues that the conjunctive "and" which joins "preparing" to "manufacturing" in TSUS item 666.25,

> Industrial machinery for preparing *and* manufacturing food or drink . . .
> Other . . . . [Emphasis added.],

creates a dual requirement. According to the Government, to fall within this provision a machine must be used both for preparing food or drink and for manufacturing food or drink. The Government accepts the Customs Court's version of the *Stone & Downer* definition of the phrase "industrial machinery for preparing and manufacturing food or drink," i. e., machinery which changes the character of the food or advances it in condition and makes it more valuable for its intended use. The Government submits that the phrase "industrial machinery for manufacturing food or drink" should be defined as machinery used

---

**3.** It is not disputed that TSUS item 666.25 is a chief use provision, and therefore, governed by TSUS General Interpretative Rule 10(e)(i) which defines chief use as the use which exceeds all other uses combined:

> 10. *General Interpretative Rules.* For the purposes of these schedules—
> (e) in the absence of special language or context which otherwise requires—

on line in a manufacturing process. Under this interpretation, the Sortex color sorters would not fall within TSUS item 666.25, since only 14 of 86 were used on line in connection with a manufacturing process.[3]

We cannot adopt the Government's interpretation of TSUS 666.25, because it *ignores* the grammatical construction of the provision. In the heading "Industrial machinery for preparing and manufacturing food or drink" both verbs are used in the identical form, as gerunds following the preposition "for." The Government would have us construe the first gerund, "preparing," as establishing *for what* the machine must be used, and the second gerund, "manufacturing," as establishing *where* (in or at what place) the machine must be used. Such a construction disregards the fact that both gerunds are objects of the preposition "for." If Congress had intended to create a where-used requirement, it would have used another prepositional phrase, e. g., industrial machinery for preparing food or drink in a manufacturing operation. Since both gerunds follow the preposition for, both must be construed as establishing the for-what-use requirement.

Furthermore, since TSUS item 666.25 is a chief use provision, the phrase "for preparing and manufacturing food or drink" cannot be construed as creating two for-what chief use requirements, it being impossible to have two chief uses under the definition of chief use in TSUS General Interpretative Rule 10(e)(i). This rule defines chief use as "the use which exceeds all other uses (if any) combined." Obviously, there cannot be two uses each of which exceeds all other uses combined.

 In view of this and the fact that there is only a subtle distinction between

> (i) a tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation, of articles of that class or kind to which the imported articles belong, and the controlling use is the chief use, i. e., the use which exceeds all other uses (if any) combined . . . .

the meaning of the verbs "prepare" and "manufacture" when used in the context of foods (e. g., Is frozen orange juice prepared or manufactured?), we conclude that the phrase "for preparing and manufacturing food or drink" must be construed as creating just one for-what chief use requirement. This interpretation is consistent with the subheadings inferior to the heading in question, since in two of these subheadings, either a form of the verb prepare or a form of the verb manufacture, but not both, is used. TSUS item 666.20 ("Machinery for use in the *manufacture* of sugar"); subheading under TSUS item 666.25 ("Machinery for *preparing* and processing fruits and vegetables"). (Emphasis added.)

Since the Sortex color sorters were chiefly used for changing the character of food, advancing it in condition, and making it more valuable for its intended use, they were properly classified as industrial machinery for preparing and manufacturing food. The fact that only 14 of 86 machines were used on line in a manufacturing operation is irrelevant.

### III

In its final argument, the Government maintains that plaintiff-importer failed to present sufficient evidence to make out a prima facie case that the imported merchandise is covered by TSUS item 666.25, because it did not introduce evidence concerning the chief use of articles of the class or kind to which the imported merchandise belongs.

It is undisputed that TSUS item 666.25 is a chief use provision. General Interpretative Rule 10(e)(i), which governs such provisions, provides for use to be determined by chief use, in the United States at, or immediately prior to, the date of importation, of articles of that class or kind to which the imported articles belong. Thus, to prove its case, the importer had to show that at, or immediately prior to, January 1974, color sorters of the class or kind to which the Sortex 964 and 964C belong were chiefly used in preparing and manufacturing food or drink.

At trial the importer attempted to introduce evidence concerning color sorters of the class or kind to which the Sortex 964 and 964C belong, but the Government objected to this line of testimony. The judge sustained this objection, apparently because he was under the impression that color sorters of the class or kind to which the Sortex 964 and 964C belong were not relevant to any factual issue in dispute. The following excerpt from the record at trial constitutes the complete discussion of this point:

Q Would you please describe what you would regard as the characteristics of a dry electronic color sorting machine of the same class or kind as the 964 machine?

MRS. ZIFF: I object. If he is talking about the 964. Again, counsel is going back to the same thing, to bring in testimony which will lead to machines pending in other cases, not been noticed for trial, not even been the subject of motions to suspend. I have no objections to testimony as to the development of the 964 within the realm of his expertise.

MR. SONNENBERG: And there can't be any question that the class or kind of machines to which the 964 belongs is always an issue in this case.

JUDGE RICHARDSON: Just take the 964 machine. We don't need the others. Limit it, Mr. Sonnenberg.

Q Would you consider the 964 and 962 machine to be of the same class or kind as the electronic tomato harvester machine you are working with now?

JUDGE RICHARDSON: Objection sustained.

MR. SONNENBERG: Can we agree that any inquiry about the tomato harvester is not relevant to this case?

JUDGE RICHARDSON: Sure.

The only possible basis for the judge's conclusion that testimony about color sorters other than the Sortex 964 and 964C was unnecessary is that he assumed that the parties did not dispute that the chief use made of the Sortex 964 and 964C

was representative of the chief use made of color sorters of the same class or kind. The Government never offered any evidence to the contrary, nor did it say anything to correct this assumption. If the Government intended to contest the issue of whether the chief use made of the Sortex 964 and 964C was representative of the chief use made of color sorters of the same class or kind, it should have done so at trial where the issue could have been resolved. By its behavior, the Government precluded resolution of this issue. Equity demands that we construe such conduct as an implied admission that this issue was not in dispute.

Therefore, we conclude that plaintiff-importer established that at, or immediately prior to, the date of importation, color sorters of the class or kind to which the Sortex 964 and 964C belong, were chiefly used in preparing and manufacturing food and drink, because the importer established that at that time the Sortex 964 and 964C were so used, and the Government, by its conduct at trial, impliedly admitted that the uses made of the Sortex 964 and 964C were representative of the uses made of color sorters of the same class or kind.

Accordingly, for the reasons set forth herein, the decision of the Customs Court is *affirmed*.

MILLER, J., concurs in result.