(Appeal No. 81–13)

UNITED STATES *v.* STANDARD SURPLUS SALES

(667 F. 2d 1011)

United States Court of Customs and Patent Appeals, December 17, 1981,

*Stuart E. Schiffer*, Acting Asst. Atty. General, *David M. Cohen*, Director, *Joseph I. Liebman*, Attorney-in-charge, and *Robert H. White*, of New York, New York, attorneys for appellant.

*John N. Politis*, of Los Angeles, California, attorney for appellee.

[Oral argument on October 5, 1981 by *Robert H. White* for appellant and *John H. Politis* for appellee.]

Before MARKEY, *Chief Judge*, RICH BALDWIN, MILLER, and NIES, *Associate Judges*.

MARKEY, *Chief Judge*.

Appeal by the Government from a judgment of the United States Court of International Trade, 1 C.I.T. 119, 511 F. Supp.

804 (1981), sustaining a protest by Standard Surplus Sales, Inc. (Standard) against classification of various styles of imported bags as "luggage" under item 706.24, Tariff Schedules of the United States (TSUS). The Court of International Trade held the goods properly classifiable under item 735.20, TSUS, as "sports equipment." We reverse.[1]

## BACKGROUND

### STATUTES

The pertinent items and headnotes from TSUS, 19 USC 1202, are:

SCHEDULE 7.—SPECIFIED PRODUCTS; MISCELLANEOUS AND NON-
ENUMERATED PRODUCTS

PART 1. FOOTWEAR; HEADGEAR AND HAT BRAIDS; GLOVES; LUG-
GAGE, HANDBAGS, BILLFOLDS, AND OTHER FLAT GOODS

Subpart D.—Luggage; Women's and Children's Handbags; and
Billfolds, Card Cases, Coin Purses, and Similar Flat
Goods

*Subpart D headnotes:*

\*　　\*　　\*　　\*　　\*　　\*　　\*

2. For the purposes of the tariff schedules—
 (a) the term *"luggage"* covers—
 (i) travel goods, such as trunks, hand trunks, lock-
 ers, valises, satchels, suitcases, wardrobe cases,
 overnight bags, pullman bags, gladstone bags,
 traveling bags, knapsacks, kitbags, haversacks,
 duffle bags, and like articles designed to contain
 clothing or other personal effects during travel;
 and
 (ii) brief cases, portfolios, school bags, photographic
 equipment bags, golf bags, camera cases, binoc-
 ular cases, gun cases, occupational luggage cases
 (physicians'; sample, etc.), and like containers
 and cases designed to be carried with the person,
 except handbags as defined herein;

\*　　\*　　\*　　\*　　\*　　\*　　\*

Luggage and handbags, whether or not fitted with bottle, dining, drinking, manicure, sewing, traveling, or similar sets; and flat goods:

\*　　\*　　\*　　\*　　\*　　\*　　\*

Of textile materials (except yarns, of paper), whether or not ornamented:

\*　　\*　　\*　　\*　　\*　　\*　　\*

Other:

\*　　\*　　\*　　\*　　\*　　\*　　\*

---

[1] A shoulder pad was classified under item 386.50 TSUS, as other cotton articles. The Government abandoned its challenge to the finding that the shoulder pads are properly classifiable as sports equipment.

Item 706.24 Other _____ 20% or 24% ad
 val. (Depend-
 ing on date of
 entry, Pres.
 Proc. 3822,
 T.D. 68–9).

 Of cotton:

 * * * * * * *

 Of other textile materials [; and]

 * * * * * * *

PART 5. ARMS AND AMMUNITION; FISHING TACKLE; WHEEL GOODS;
 SPORTING GOODS; GAMES AND TOYS

 * * * * * * *

 Subpart D.—Games and Sporting Goods

*Subpart D headnotes*:
 1. This subpart covers equipment designed for indoor or
outdoor games, sports, gymnastics, or athletics, but does not
cover—

* * * * * * *

 (vii) luggage (see part 1D of this schedule).

* * * * * * *

Item 735.20 Puzzles; game, sport, gymnastic,
 athletic, or playground equip-
 ment; all the foregoing, and parts
 thereof, not specially provided
 for _____ 10% or 12% ad
 val. (Depend-
 ing on date of
 entry, Pres.
 Proc. 3822,
 T.D. 68–9).

THE IMPORTED MERCHANDISE

 Standard introduced illustrative exhibits: (1) Ridge Runner
Nylon Bag; (2) Nylon Trail King Bag; (3) Nylon Crestline Bag;
(4) Pathfinder Nylon Bag; (5) Nylon Cougar (or Ecology) Bag; (6)
Nylon Overnighter Bag; (7) Nylon Mini-Rucksack; (8) Nylon Hiker
Rucksack; (9) Fanny Bag; (10) Nylon Stuff Bag; and (11) Nylon
Belt Pouch.
 Exhibits 1 through 5 are bags designed for attachment to a rigid
or semi-rigid aluminum framework. The assemblage of the bag on
a frame is a type of backpack called a frame pack.
 Exhibits 6, 7 and 8 are frameless, smaller packs, called soft packs,
and are backpacks complete in themselves. Each of these three has
adjustable shoulder straps. Exhibit 8 has a nylon handle at the top.
 Exhibit 9 is an oblong zippered bag sewn into an adjustable waist
belt and worn on the user's lower backside. Exhibit 10 is a long

cylindrical bag, closed at one end by a drawstring. Exhibit 11 is a small nylon zippered pouch attachable to the user's belt with metal clips.

### COURT OF INTERNATIONAL TRADE

The Court of International Trade found the importer's exhibits to be "markedly different from articles known as luggage, which are defined in the Tariff Schedules in Schedule 7, Part 1, Subpart D, headnote 2(a)." [2] The court said that none of "exhibits are designed to, or would be convenient to, carry by hand." Noting that exhibits 1–5 were designed to be attached to a frame, the court said "it would be contrary to the weight of the evidence to consider them alone, or in conjunction with the frame, as pieces of luggage."

The court found that chief use of the imported merchandise is in the sport of backpacking—"a use which is not the sort of 'travel' for which the luggage provision of the Tariff Schedules was intended. Use of these packs is use of the essential instruments with which the sport is practiced."

### ISSUE

The issue is whether the imported nylon bags are properly classifiable as sports equipment or as luggage.

## OPINION

Standard characterizes as a finding of fact the trial court's determination that the exhibits are "markedly different" from the listed luggage exemplars. ■ The common meaning of a tariff term is, however, a question of law. *Marvel* v. *Merritt*, 116 U.S. 11, 12 (1885); *United States* v. *National Carloading Corp.*, 48 CCPA 70, 71, C.A.D. 767 (1961); *United States* v. *Florea & Co., Inc.*, 25 CCPA 292, 296, T.D. 49396 (1938). The scope of review is not, therefore, controlled by the clearly erroneous standard of 28 U.S.C. 2601(c) (1976), as *amended* by the Customs Courts Act of 1980, Pub. L. No. 96–417, § 403(d), 94 Stat. 1741.

■ In interpreting a tariff term, a court may:

rely upon its own understanding of the word or term used, and it may assist its own understanding by reference to the works of

---

[2] In the court's opinion of January 13, 1981, the exemplars: "traveling bags, knapsacks, kitbags" are omitted from a quote of headnote 2 (a). A February 3, 1981 errata sheet supplied the omission. That the same omission occurred in the Government's *Proposed Findings of Fact and Conclusions of Law*, submitted on November 14, 1980, may account for the omission in the opinion of January 13, 1981.

At trial, Standard's counsel read into the record the complete headnote, including "traveling bags, knapsacks, kitbags." Government counsel also noted at trial that "[h]eadnote 2 (a)(i) provides for among other things . . . traveling bags, knapsacks and the like," and emphasized that the imported merchandise" certainly falls within the headnote of traveling bags and certainly within the headnote as to many of the items such as knapsacks." Further, the major thrust of Standard's argument was to differentiate the imports from knapsacks. A sample knapsack was introduced as Exhibit 12.

standard lexicographers, scientific authorities, the testimony of witnesses, or by such other means as may be available. If testimony be offered upon the common meaning of a statutory word or term such testimony is advisory only and has no binding effect on the court.

*United States* v. *John B. Stetson Co.*, 21 CCPA 3 at 9, T.D. 46319 (1933); *see Savannah Sugar Refining Corp.* v. *United States*, 20 CCPA 272, 278, T.D. 46061 (1932), *cert. denied*, 288 U.S. 615 (1933). When Congress has used a term in its everyday sense, dictionary citations are most significant. *Floral Arts Studio* v. *United States*, 46 CCPA 21, 26, C.A.D. 690 (1958).

The testimony establishes, and the Court of International Trade agreed, that exhibits 1–8 are generically known as "backpacks." A survey of eleven authoritative dictionaries published between 1888 and 1969 reveals that the noun "backpack" is absent from all of them. The first reference to "backpack" appears to have occurred in the 1963 edition of *The World Book Encyclopedia Dictionary* where it is defined as a transitive verb "to carry in or as a pack on one's back." "Knapsack," on the other hand, was not only a commonly recognized term in 1962 when the present Tariff Schedules were drafted but became one of the luggage exemplars in headnote 2(a).[3]

The role of "knapsack" as a precursor of the term "backpack" was indicated at trial:

Q: "And how long have you been a backpacker?"
A: "Since I was about six years old. I don't want to count that far."
Trial Judge: "They used to call them a knapsacker then."

Tariff terms are written for the future as well as the present, *United States* v. *L. A. Salomon & Bro.*, 22 CCPA 490, 495, T.D. 47483 (1935), meaning that ▮ tariff terms can be expected to encompass merchandise not known to commerce at the time of their enactment, provided the new article possesses an essential resemblance to the one named in the statute. *Smillie & Co.* v. *United States*, 12 Ct. Cust. Appls. 365, 367, T.D. 40520 (1924).

Standard's attempt to distinguish the imported backpacks from "knapsacks," by comparing them to a sample knapsack (Exhibit 12) must fail. Standard's witnesses testified that Exhibit 12: (1) is made of heavy duck material; (2) has narrow shoulder straps that rope up during use, reducing their load spreading capacity; and (3) rests directly on the user's back, causing perspiration and discomfort. Though Exhibit 12 is made of heavy duck, "knapsacks" can, like the imported bags, be made of lightweight nylon. *Webster's New Collegiate*

---

[3] According to *A New English Dictionary on Historical Principles* (1888), "knapsack" was first recorded in the sixteenth century.

*Dictionary* (1977). Moreover, under item 706.24, TSUS, the material is not critical. Articles may be "[o]f cotton . . . [or] [o]f other textile materials." The Tariff Classification Study (1960), in discussing Schedule 7, Part 1, Subpart D, states at page 47, "This subpart would cover all luggage, handbags, and flat goods of whatever material composed. . . ." That Exhibit 12 employed shoulder straps of a particular design is of no probative value in determining whether the imported merchandise was properly classified. Equally nonprobative is the body-contact occurring in the use of knapsacks. Exhibits 1–5 must be considered in the condition imported, that is, without the contact-preventing frames. Exhibits 6–8, the soft packs, like Exhibit 12, are worn in contact with the body.

The substantial identity of backpacks and knapsacks is reflected in dictionary definitions:

> Backpack—"a pack or knapsack carried on the back, as by campers." *Funk & Wagnalls Standard® Dictionary of the English Language* (International Edition) ·(1973);
> Backpack—"a load carried on the back (as by knapsack) * * * ." *Webster's Third International Dictionary* (1966);
> Backpack (noun)—"a camping pack (as of canvas or nylon) supported by a usu. aluminum frame and carried on the back * * * ."; (verb transitive) "to carry (food or equipment) on the back esp. in hiking"; and
> Knapsack—"a bag (as of canvas or nylon) strapped on the back and used (as on a hike) for carrying supplies or personal belongings." *Webster's New Collegiate Dictionary* (1977).

That inclusion of knapsacks as luggage exemplars in the 1962 Tariff Schedules was intended to have encompassed backpacks is consistent with the 1977 *Summary of Trade and Tariff Information* (USITC Series No. 841, Control No. 7–1–1, November, 1977 on luggage).[4] This *Summary* states at page 2:

> [L]uggage can be separated into a number of broad categories * * * (1) traditional hand luggage[5] * * * (4) sports and recreational bags, such as golf bags, gun cases, fishing-rod cases, pool-cue cases, bowling bags, tennis bags * * * *backpacks*,

---

[4] Post-1962 *Summaries of Trade and Tariff Information* are not evidence of legislative intent. *See Volkswagen of America, Inc. v. United States*, 68 Cust. Ct. 122, 128–29, C.D. 4348, 340 F. Supp. 983, 988 (1972), *aff'd*, 61 CCPA 41, C.A.D. 1115, 494 F. 2d 703 (1974). They can, however, evidence administrative practice respecting tariff terms. *Hawaiian Motor Co.*, v. *United States*, 67 CCPA 42, 45, C.A.D. 1241, 617 F. 2d 286, 289 (1980). Though not controlling, the *Summaries* have been employed as aids in ascertaining the meaning of a tariff term. *United States v. Sortex Co. of North America, Inc.*, 66 CCPA 57, C.A.D. 1221, 596 F. 2d 1002 (1979); *Schott Optical Glass, Inc.* v. *United States*, 67 CCPA 32, C.A.D. 1239, 612 F. 2d 1283 (1979).

[5] Findings, such as that plastic picnic bags are "luggage," *Prepac, Inc.* v. *United States*, 78 Cust. Ct. 108, C.D. 4694 (1977), are in accord with the 1977 *Summary's* classification of traditional hand luggage as but one category of "luggage." The trial court erred in attempting to distinguish the headnote 2(a) exemplars from the imports by stating that none of the latter "are designed to, or would be convenient to, carry by hand." Exhibit 8 has a handle, and the other imports are no more or less convenient to "carry by hand" than Exhibit 12, the sample knapsack.

knapsacks, haversacks, duffle-bags, binocular cases, and camera cases * * * . [Emphasis supplied.]

Exhibit 7 is labeled "Nylon Mini-Rucksack." One of Standard's witnesses identified Exhibit 8 as a "Nylon Hiker Rucksack." Dictionary definitions equate rucksacks and knapsacks:

Rucksack—"knapsack" *Webster's Seventh New Collegiate Dictionary* (1963); *Webster's New Collegiate Dictionary* (1977); Rucksack—"a type of knapsack carried by hikers, bicyclists, etc. [G: lit., back sack] *The Random House Dictionary of the English Language* (unabridged) (1967); Rucksack—"a kind of knapsack strapped over the shoulders" *Webster's New World Dictionary* (College Edition) (1962); and Rucksack—"knapsack carried by hikers" *The American College Dictionary* (1962).

Backpacks and rucksacks are within the common meaning of the 1962 tariff term "knapsack". As "knapsacks" are an exemplar of "luggage" under headnote 2(a), we hold that Exhibits 1–8 were properly classified under item 706.24, TSUS, by the Customs Service.

The trial judge's finding that the chief use of the imported merchandise is in the sport of backpacking was clearly correct on this record. The accompanying characterization of that use as "not the sort of 'travel' for which the luggage provision * * * was intended" was in error. The term "luggage" in headnote 2(a)(i) covers "travel goods, such as * * * knapsacks * * * and like articles designed to contain clothing or other personal effects during travel." "Knapsacking" is defined as "travelling with a knapsack" in *Webster's New International Dictionary of the English Language* (1949). Thus the sort of "travel" for which the luggage provision was intended includes knapsacking and its equivalent backpacking. It can hardly be said that one hiker wearing a knapsack was engaged in "travel" within the statute and that a companion wearing a backpack was not. Nor can it be said that the former was carrying luggage and the latter was not. We are impelled to the conclusion that backpacking is also "travel" within the meaning intended in headnote 2(a)(i).

Exhibits 9, 10 and 11 were specifically designed for backpacking and were also apparently unknown when the 1962 Tariff Schedules were drafted. To be classified under a specific tariff provision, it "would be sufficient if the new article possessed an essential resemblance to the former [exemplars] in those particulars which the statute established as the criteria of the classification." *Klipstein* v. *United States*, 4 Ct. Cust. Appls. 510, 514, T.D. 33936 (1913); *see Smillie & Co.* v. *United States, supra.* The criteria for classification under item 706.24, TSUS is established in its accompanying headnote

2(a)(i), i.e., the imported bags must be "like" [6] exemplars and "designed to contain clothing or other personal effects during travel." Exhibits 9, 10 and 11 possess characteristics common to knapsacks, duffle bags and satchels, respectively, and are used for the purpose set forth in headnote 2(a)(i). Exhibits 9, 10 and 11 were therefore properly classified under item 706.24, TSUS.

 Standard argues that because backpacking is a sport, *Newman Importing Co., Inc.* v. *United States*, 76 Cust. Ct. 143, C.D. 4648 (1976), equipment used in that sport should be classified as sport equipment under item 735.20, TSUS. However, its accompanying headnote. specifically excludes "luggage" from 735.20 coverage. The exclusionary headnote directs a classifier to part 1D, where headnote 2(a)(i) includes "knapsacks" and headnote 2(a)(ii) includes "golf bags" and "gun cases." The 1977 *Summary of Trade and Tariff Information*, *supra*, lists "sports and recreational bags" as a broad category of luggage. Headnote 1(vii), the headnote 2(a) exemplars, and the *Summary* thus indicate that although the imported bags are used in the sport of backpacking, they are nonetheless properly classified as luggage.

Responding to the Government's position that exhibits 1–5 are unassembled or unfinished luggage, Standard assumes, *arguendo* that those exhibits are "luggage" when attached to frames. Standard then argues that, because they are imported without frames, they are at that time parts of luggage. Thus, argues Standard, they are not classifiable under item 706.24, TSUS, which does not provide for parts of luggage, but are classifiable under item 735.20, TSUS, which provides for sport equipment "and parts thereof." The argument is without merit.

In view of headnote 1(vii), *supra*, the classifications for luggage under item 706.24, TSUS, and for sport equipment under item 735.20, TSUS, are mutually exclusive. Exhibits 1–5 cannot be both *parts of luggage* and *parts of sport equipment*. As above indicated, Standard has failed to carry its burden of proving the correctness of its claimed classification as sport equipment under item 735.20. The importer

---

[6] Standard's argument that the word "like" in headnote 2(a) must be given a particular construction is without merit. The authorities cited in its support are inapposite.

*American Foundation (Inc.)* v. *United States*, 19 Ct. Cust. Appls. 36 T.D. 44872 (1931), held that a carillon is not "like" any of the widely diverse articles in paragraph 1706 of the Tariff Act of 1922, but was specifically provided for under paragraph 1443 as a musical instrument. A comparison of articles as diverse as "photographs" and "works in terra cotta" is not analogous to the comparison here required, where the imports and exemplars are "like" articles under the definition of "like" in *American Foundation*—"[h]aving the same, or nearly the same appearance, qualities, or characteristics; similar." 19 Ct. Cust. Appls. at 42.

*United States* v. *Japan Import Co., Inc.*, 2 Cust. Ct. 926, R.D. 4568 (1939) construes the terms "like or similar" as used in relation to a *value* statute—§ 402(g) of the Tariff Act of 1930 defining the American selling price. The interpretation of "like" as employed in that section of the statute does not control the interpretation of the term as employed in another statutory section. *Cf. Albert F. Maurer Co.* v. *United States*, 51 CCPA 114, 119-20, C.A.D. 845 (1964) (converse situation).

cannot, therefore, establish its asserted classification for exhibits 1–5 as parts of sport equipment. Hence, exhibits 1–5 are presumed to have been properly classified as luggage.[7] *See United States* v. *A. Johnson & Co., Inc.*, 66 CCPA 35, C.A.D. 1218, 588 F. 2d 297 (1978); *United States* v. *New York Merchandise Co., Inc.*, 58 CCPA 53, C.A.D. 1004, 435 F. 2d 1315 (1970); *United States* v. *National Starch Products, Inc.*, 50 CCPA 1, C.A.D. 809, 318 F. 2d 737 (1962), *cert. denied*, 373 U.S. 923 (1963).

We conclude that the imported merchandise was properly classified under item 706.24, TSUS. The judgment of the Court of International Trade must therefore be *reversed*.

(Appeal No. 81–17)

THE UNITED STATES *v.* MIRACLE EXCLUSIVES, INC.

(668 F. 2d 498)

---

[7] The importer contends that the Government is not entitled to a presumption of correctness because item 706.24, TSUS, encompasses more than one category of merchandise. We will not consider this contention untried below and raised for the first time on appeal. *International Seaway Trading Corp.* v. *United States*, 61 CCPA 20, 24–25, C.A.D. 1112, 488 F. 2d 544, 547 (1973); *Anderson Organization* v. *United States*, 46 CCPA 47, 50, C.A.D. 694 (1958); *Lloyd's Subagent* v. *United States*, 19 CCPA 408, 410, T.D. 45576 (1932).