BROOKSIDE VENEERS, LTD., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 81-9-01305

Before CARMAN, *Judge.*

MEMORANDUM OPINION AND ORDER

(Decided December 30, 1986)

*Stedina and Deem (Charles P. Deem)* for the plaintiff.

*Richard K. Willard,* Assistant Attorney General, *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, *(Saul Davis)* Department of Justice, Civil Division, Commercial Litigation Branch for the defendant.

CARMAN, *Judge:* Plaintiff challenges the United States Customs Service (Customs) classification of certain wood products invoiced as manmade veneers and marketed as Brookline veneers under item 207.00 of the Tariff Schedules of the United States (TSUS) as articles of wood, not specially provided for.

The merchandise in question was manufactured in and exported from Italy to New York in 1979, 1980, and 1981. It consists of veneers sliced from a block of natural wood veneers which are dyed,[1] glued, bonded, and cold pressed together. The formation and slicing of the block allows for a particular color, grain, and pattern[2] of the final product depending upon the customer's requirements. The merchandise is used in the same manner and for the same purposes as natural veneers and some plastics materials.[3] It was not known in commerce at the time of enactment of the TSUS.

The imported articles were assessed with duty under TSUS Schedule 2, Part 3 in the following manner:

|  |  | 1979 | 1980 | 1981 |
|---|---|---|---|---|
| 207.00 | Articles not specially provided for, of wood .................. | 8% | 7.6% | 7.3% |

The plaintiff contends that the merchandise should have been classified and assessed with duty in accordance with item 240.03 and definitions therein:

*Part 3 headnotes:*

1. For the purposes of this part, the following terms have the meanings hereby assigned to them:

(a) *Wood veneers:* Wood sheets or strips, regardless of thickness, quality or intended use, produced by the slicing or rotary cutting of logs or flitches; and wood sheets, not over ¼ inch in thickness, produced by sawing and of a type used to overlay inferior material;

---

[1] Plaintiff utilizes an infinite variety of colors, some of which do not appear in any known natural tree, log, or flitch from which natural wood veneers are sliced.

[2] Depending upon the angle at which the block is sliced, various patterns are created.

[3] The merchandise is used in the construction and manufacture of buildings, furniture, fittings, doors, window frames, wall panelling, musical instruments, audio speakers, boats, tennis rackets, etc. It is also used in the manufacture of products commonly and commercially known as wood veneer panels.

\* \* \* \* \* \* \*

Wood veneers, whether or not face finished, including wood veneers reinforced or backed with paper, cloth, or other flexible material:

Not reinforced or backed:

\* \* \* \* \* \* \*

| | | 1979 | 1980 | 1981 |
|---|---|---|---|---|
| 240.03 | Other ...... | 2% | 2%/Free | Free[4] |

The question presented for decision is whether the imported materials were properly classified by Customs as articles of wood not specially provided for. The Court disagrees with the classification by Customs and holds that plaintiff's merchandise should have been classified as wood veneers.

*Plaintiff's Contentions*

Plaintiff contends that Brookline veneers, in accordance with usage and common and commercial meaning should be classified as wood veneers. Plaintiff urges the source of veneers has never been an important component in the classification of veneers. Assuming source an important factor, however, plaintiff disagrees with the meaning ascribed to the terms log and flitch by the defendant in the tariff provision for wood veneers. More specifically, plaintiff contends that the words log and flitch lack sufficient precision to enable the exclusion from classification as wood veneers of plaintiff's merchandise. Plaintiff asserts the defendant has erroneously interpreted the tariff provision to require the words "only natural" before "log or flitch" thus compelling the conclusion that plaintiff's reconstructed Brookline veneers are not wood veneers. Plaintiff further argues the terms log and flitch are capable of including articles made by artificial means.

*Defendant's Contentions*

In opposition, defendant argues Congress explicitly provided that the use of the product is irrelevant in the determination of whether or not an article is classifiable as wood veneer. Defendant further contends that common and commercial meaning are irrelevant, since by defining the term wood veneers and not altering this definition in a subsequent amendment, Congress evinced an intent to limit the scope of the term to its literal elements. One of these elements, defendant maintains, is source-log or flitch. Defendant asserts that the block from which Brookline veneers are sliced is neither a log nor a flitch as these terms are defined and understood;

---

[4] By an amendment to Schedule 2, Part 3, the duty on hardwood veneers, items 240.00–240.06, was eliminated. *See* Act of Dec. 28, 1980, Pub. L. No. 96–609, § 116, 94 Stat. 3555, 3559 (codified at 19 U.S.C. § 1202). The purpose of the amendment was to "enable U.S. manufacturers of plywood, who rely on imported logs and veneers for the manufacture of their product to obtain veneers at a lower cost and thus compete more effectively with imported plywood." S. REP. NO. 999, 96th Cong., 2d Sess. 19 (1980).

and therefore, plaintiff's merchandise cannot be classified as wood veneers.

DISCUSSION

The rules of statutory construction provide that a statute must be construed in accordance with legislative intent. If this intent is clear from the language of the statute, no further inquiry is needed. *United States* v. *Esso Standard Oil Co.,* 42 CCPA 144, 151 C.A.D. 587 (1955). If the intent is not apparent, the Court will consider legislative history *United States* v. *Kung Chen Fur Corporation,* 38 CCPA 107, 117, C.A.D. 447 (1951); long-established administrative practice *Commonwealth Oil Refining Co.* v. *United States,* 60 CCPA 162, 174, C.A.D. 1105, 480 F.2d 1352, 1361 (1973); judicial decisions on the issue at or closely following the time of enactment *Merry Mary Fabrics, Inc.* v. *United States,* 1 CIT 13 (1980); the commercial or common meanings of the terms in the statute when the statute is enacted *Armand Schwab & Co., Inc.* v. *United States,* 32 CCPA 129, 132 C.A.D. 296 (1945). It is also a fundamental rule that a Customs classification, once determined, is entitled to a presumption of correctness. *Ameliotex, Inc.* v. *United States,* 426 F. Supp. 556, 563 (1976), *aff'd,* 65 CCPA 22, C.A.D. 1200, 565 F.2d 674 (1977).

At issue is whether Congress manifested an intent to limit the definition of wood veneers to articles derived from logs or flitches; and if so, whether such logs or flitches must exist in their natural state. The definition of wood veneers as previously stated provides as follows:

> Wood sheets or strips, regardless of thickness, quality or intended use, produced by the slicing or rotary cutting of logs or flitches; and wood sheets, not over ¼ inch in thickness, produced by sawing and of a type used to overlay inferior material[.]

TSUS Schedule 2, Part 3, headnote 1(a).

Plaintiff suggests that prior to the enactment of the TSUS source was not a significant factor in the classification of veneers. Defendant contends that references were not made to source since logs and flitches were universally recognized as the sources for wood veneers. Veneer has been defined as:

> **1a:** a thin sheet of wood cut or sawed from a *log* and adapted for adherence to a smooth surface (as of wood) * * * as (1): a layer of wood of superior value or excellent grain for overlaying an inferior wood (as in cabinetmaking) usu. by gluing (2): any one of the thin layers that are glued or otherwise bonded together to form plywood **b:** material (as sheets of wood) for veneering; *sometimes:* thin highly glazed colored paperboard for such use **2:** something felt to resemble or functioning in the manner of a veneer of wood esp. in forming a superficial layer: as **a:** a superficial or meretricious show: GLOSS **b:** a protective or ornamental facing (as of brick or stone) for a wall **c**(1): a thin but extensive

> covering of an older geologic formation or surface * * *. [Emphasis added.]

Webster's Third New International Dictionary (1968). The leading authoritative lexicographic source in the industry as it appeared in the edition that immediately preceded the enactment of the TSUS also provides a definition:

> *Veneer.*—A thin layer or sheet of wood cut on a veneer machine.
> *Rotary-cut veneer.*—Veneer cut in a lathe which rotates a *log or bolt,* chucked in the center, against a knife.
> *Sawed veneer.*—Veneer produced by sawing.
> *Slicing veneer.*—Veneer that is sliced off a *log, bolt, or flitch* with a knife.
> [Emphasis added.]

Forest Products Laboratory, Forest Service, U.S. Dep't of Agriculture, Agriculture Handbook No. 72, Wood Handbook 490 (1955) (hereinafter cited as Wood Handbook).

Despite plaintiff's contention, the Court is guided by the plain language of the above definitions and the TSUS which explicitly refer to source. The language of the TSUS expressly provides that at least with regard to slicing and rotary cutting, the material from which the veneers are derived must be a log or flitch. Presumably, reference was made to source since Congress understood wood veneers to mean wood veneers derived from wood or wood products rather than some other material. Absent strong evidence to the contrary, we are simply unable to conclude that the words log and flitch are superfluous. *See Ameliotex,* 65 CCPA at 25, 565 F.2d at 677 ("Congress is presumed not to have used superfluous words in a statute."). In accordance with this language, we are also satisfied that Congress did not intend the usage of the article to be considered in ascertaining whether the merchandise is classifiable as wood veneers.

It does not necessarily follow, however, that Congress by enacting Pub. L. 96–609,[5] which eliminated the duty on hardwood veneers, intended to exclude articles such as plaintiff's merchandise from the scope of the wood veneer provision. There is nothing in the record to suggest that Congress was even remotely aware and thus approved of Customs' classification of the imported articles. No plausible justification for the distinction, moreover, is apparent.

The analysis therefore focuses upon and underscores the importance of the meaning ascribed to the terms log and flitch in the definition of wood veneers. The issue is whether the block from which Brookline veneers are sliced, in its artificial state, can be treated as a log or flitch consonant with the statutory definition of wood veneers. In defining wood veneers, Congress has not provided definitions for either log or flitch.

In the absence of definition, Congress is presumed to attach the common meaning of a term in a tariff provision. *Schott Optical*

---

[5] *See supra* note 4.

*Glass, Inc.* v. *United States,* 67 CCPA 32, 34, C.A.D. 1239, 612 F.2d 1283, 1285 (1979). To interpret the term, the Court may rely upon its own understanding of the term and may refer to the works of standard lexicographers, scientific authorities, and the testimony of witnesses. *United States* v. *Standard Surplus Sales, Inc.,* 69 CCPA 34, 37–8, 667 F.2d 1011, 1013 (1981). Of additional import is TSUS General Rule of Interpretation 10(c) which provides that an imported article described in two or more provisions is classifiable under the provision which more specifically describes it, bearing in mind that tariff schedules are drafted for the future as well as the present and embrace terms not known at the time of enactment. *Standard Surplus Sales,* 69 CCPA at 38, 667 F.2d at 1014.

Plaintiff contends that the common and commercial understanding of the terms log and flitch are not precise; and therefore, it is inappropriate to exclude plaintiff's block or reconstructed logs from that meaning. Plaintiff offers evidence from an article written by its President, Arne Thomsson, to support this contention. In discussing the uses of a lathe and slicer to produce wood veneers, Mr. Thomsson states that a log is processed by steaming, cooking, and drying before used to produce ordinary wood veneers.

Defendant directs the Court to consider the definitions of log and flitch as found in the Wood Handbook. The Handbook defines log and flitch as follows:

> *Log.*—A section of the trunk of a tree in suitable length for sawing into commercial lumber.
>
> \*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*
>
> *Flitch.*—A portion of a log sawed on two or more sides and intended for remanufacture into lumber or sliced or sawed veneer. The term is also applied to the resulting sheets of veneer laid together in sequence of cutting.

Wood Handbook, *supra,* at 485, 482. In the 1974 revised edition of this book, log is not defined. Flitch is defined in essentially the same manner as above, but the authors state that the term is loosely used.

Defendant asserts that the dyed, bonded, glued, and cold pressed sheets are not comprised within the Handbook's description of log or the first definition of flitch. Defendant also maintains that the second definition of flitch is limited to sheets immediately after removal from the log and placed together in sequence of cutting. This definition, defendant suggests, encompasses no further processing, such as that experienced during the production of Brookline veneers.

It is nevertheless not clear that the words log or flitch as provided by these definitions and enunciated by Congress in the provision defining wood veneers are precise and should be understood to mean log or flitch in a natural state. As Mr. Thomsson's article appears to show, even the log used to produce ordinary wood veneers undergoes some processing thus transforming the article somewhat from its

"natural" state. If we were to adopt defendant's reasoning, even ordinary wood veneers produced from these logs would be excluded from the classification of wood veneers.

Simple logic, however, dictates a different result. Tariff terms must be construed to avoid absurd or anomalous results. 2 R. Sturm, Customs Law & Administration § 51.4, at 29 (3d ed. 1986). Tariff terms thus encompass articles not known at the time of enactment if the new article possesses an essential resemblance to the one referred to in the statute. *Standard Surplus Sales,* 69 CCPA at 38, 667 F.2d at 1014 (1981); *FAG Bearings, Ltd. v. United States,* 9 CIT 227, Slip Op. 85–52 (1985). An unqualified provision for an article includes those made by artificial means in the absence of contrary legislative intent or administrative practice. *Joseph Weiss Co., Inc. v. United States,* 31 Cust. Ct. 17, 19, C.D. 1539 (1953).

Defendant has not shown an intent to require the use of a natural log or flitch in composing veneers. Rather, defendant draws a comparison between MICRO=LAM (a registered trademark) and the block from which Brookline veneers are sliced. Since MICRO=LAM is an end product used for structural purposes and apparently not for use in manufacturing wood veneers, the relevance of this comparison is unclear. Unlike MICRO=LAM, the Brookline block is used in the manufacture of wood veneers. Plaintiff's veneers are made by an advanced process and are state of the art within the industry. The character of the veneers which are sliced from the block, but for the detail and color of the product, does not differ from that of ordinary veneer.

Plaintiff has therefore successfully rebutted the presumption of correctness afforded Customs' classifications and persuaded us that log and flitch need not exist in a natural state. This result seems consistent with apparent Congressional intent to draw terms for the future encompassing articles not technologically feasible or otherwise unavailable at the time of enactment. Had Brookline veneers been known at the time of enactment of the TSUS, presumably Congress would have classified them as wood veneers. Therefore, plaintiff's merchandise was improperly classified as "articles not specially provided for, of wood," since there is a more specific provision for classification of them. Plaintiff's articles should be reclassified and reliquidated under TSUS Item 240.03 providing for the classification of wood veneers—other.

So ORDERED.