**APPLE COMPUTER, INC., Plaintiff,**

**v.**

**The UNITED STATES, Defendant.**

**Court No. 86–01–00125.**

United States Court of International Trade.

Oct. 19, 1990.

Baker & McKenzie, Bruce H. Jackson and Jay C. Clemens, for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Commercial Litigation Branch (Al J. Daniel, Jr.) and (Sheryl A. French, U.S. Customs Service, of counsel), for defendant.

RE, Chief Judge:

Pursuant to Rule 59(e) of the Rules of this Court, the defendant moves to alter or amend the judgment in *Apple Computer, Inc. v. United States*, 14 CIT ——, Slip Op. 90–14 (Feb. 13, 1990).

In *Apple Computer*, the imported merchandise consisted of Apple x-y plotters and plotter pens. The plotters were classified by the Customs Service as "[d]rafting and drawing machines," under item 710.80, TSUS, and the plotter pens were classified as "[m]arking pens having a wick-like tip of felt or other material," under item 760.15, TSUS.

Plaintiff protested these classifications, and contended that the plotters were properly classifiable as "[o]ffice machines not specially provided for," under item 676.30, TSUS, and that the pens were properly classifiable as "[p]arts of automatic data-processing machines and units thereof," under item 676.52, TSUS. Alternatively, plaintiff contended that if the court determined that the plotters were properly classified by the Customs Service as "[d]rafting and drawing machines," under item 710.80, TSUS, then the plotter pens were properly classifiable as parts of drafting machines, under item 710.80, TSUS.

After trial, and upon consideration of the testimony of the witnesses, the briefs, and the exhibits introduced at trial, the court held that, as to the plotters, "plaintiff has overcome the presumption of correctness that attaches to the classification by Customs, and that the imported 'x-y plotters' are properly classifiable as '[o]ffice machines not specially provided for,' under item 676.30, TSUS." *Apple Computer*, Slip Op. at 22. As to the plotter pens, however, the court held that they "were properly classified by Customs as '[m]arking pens having a wick-like tip of felt or other material,' under item 760.15, TSUS." *Id.* at 26.

By this motion, the defendant requests the court to alter or amend that part of its judgment which held that the plotters had been improperly classified by Customs, as

"[d]rafting and drawing machines," under item 710.80, TSUS, and were properly classifiable as "[o]ffice machines not specially provided for," under item 676.30, TSUS.

Since the defendant has not established that the granting of a motion to alter or amend the judgment is appropriate, the motion is denied.

## DISCUSSION

■ In considering a motion to alter or amend the judgment, made under Rule 59(e) of the Rules of this Court, the court may look for guidance to those cases which have interpreted and applied the corresponding federal rule of civil procedure. *See National Hand Tool Corp. v. United States*, 14 CIT ——, Slip Op. 90–69 at 4, 1990 WL 106722 (July 23, 1990).

Some courts have held that a Rule 59(e) motion allows the trial court to reconsider issues previously litigated, and to examine the correctness of its judgment. *See Ray E. Friedman & Co. v. Jenkins*, 824 F.2d 657, 660 (8th Cir.1987). Other courts, however, have noted that a Rule 59(e) motion should not be granted if it merely restates legal arguments that have already been carefully considered by the court. *See, e.g., Frito–Lay of Puerto Rico, Inc. v. Cañas*, 92 F.R.D. 384, 390 (D.P.R.1981); *Erickson Tool Co. v. Balas Collet Co.*, 277 F.Supp. 226, 234 (N.D.Ohio 1967), *aff'd*, 404 F.2d 35 (6th Cir.1968). Nonetheless, it is clear that whether to grant or deny a Rule 59(e) motion is committed to the sound discretion of the trial court. *See Frito–Lay*, 92 F.R.D. at 390.

In its first contention on its motion to alter or amend the judgment of the court in *Apple Computer*, the defendant states that: "The Court's decision appears to consider only whether the plotter is a 'drafting machine' and does not consider whether it is described by any of the other terms in item 710.80." Specifically, the defendant contends that the x-y plotter may be described as a "drawing machine," under item 710.80, TSUS. The defendant states further that: "The Court's decision in this case appears to consider *only* whether the plotter at issue meets the definition of a 'drafting machine.'" (emphasis in original). The defendant also states that its "trial brief argued that the evidence demonstrated that the plotter was *either* 'a "drafting machine," "drawing [or] marking out ... instrument," or a similar "machine not specially provided for" all of which are encompassed by [item 710.80].'" (emphasis in original). In a footnote, the defendant added that: "These alternative bases for supporting the liquidated classification and assessment of duties under item 710.-80, TSUS, [were] plainly raised by defendant in its brief."

■ The court's opinion, however, indicates that the "alternative bases" were not merely raised but were duly considered and decided. Although TSUS item 710.80 is not quoted verbatim in its entirety throughout the opinion, it is set forth in its entirety at the outset of the opinion under the appropriate heading "Plotters Classified Under." *See Apple Computer*, Slip Op. at 3. Under that heading the court also set forth the applicable part of Schedule 7, Part 2, Subpart C.

In rearguing this case by its motion to alter or amend, the defendant restates that the "question as to the Apple color plotter is whether it is more accurately described by *any* of the terms in item 710.80, not just whether it is a 'drafting machine.'" (emphasis in original). The defendant restates the obvious.

The references to "drafting" in the memorandum opinion reflect the time and effort devoted at the trial to "drafting." Surely, it was not the sole thrust of either the plaintiff or the defendant's case. For example, the plaintiff's witness Mr. Phillip Williams was given a definition of "drafting machine" and responded that "to the best of his knowledge, the plotter is not 'known commercially' as a 'drafting and drawing machine.'" *Apple Computer*, Slip Op. at 10. In addition, in observing the manual for the x-y plotters, Mr. Williams observed that:

> The manual contained a list of drawings that could be made with the plotter, including "Engineering drawings," "Logic diagrams," "Architectural details," and

"Circuit diagrams." Mr. Williams identified these drawings as the type of drawings he had done in a drafting course, as part of his high school education. He admitted that the final product of CAD systems "serve the same function to an engineer or for an architect as drawings created by hand with [the type of drafting machine he had used at school].

*Id.*

It is to be noted that Mr. Christopher M. Stammen, the defendant's witness, "the director of Development for Computer-aided Drafting Products of Versacad Corporation[,] ... was qualified 'as an expert in programming and CAD software and related equipment used for drafting, including the X, Y plotters.'" *Id.* at 12. His demonstration of the use of the Apple plotter with the Cadapple Software is described as follows in the memorandum opinion:

> Using the Apple plotter, Mr. Stammen created a diagram similar to diagrams he had created in a drafting course he had taken as part of his education. Mr. Stammen also observed a set of drafting tools that he had used during his drafting course. He identified several tools which he could use to produce a diagram similar to the one he had made using the Apple plotter.

> The government introduced a definition of "drafting" as:

>> the act of delineating a drawing of an object, its structure, or its parts in the graphic language universally employed to communicate the engineering intent of a design, or problem. Engineering drawings consist of lines representing surfaces, edges, and contours of objects, supplemented by symbols, dimensional sizes, and notes. In a broad sense, drafting is the graphical development of an engineering problem or record.

> 5 *The New Encyclopedia Brittanica* 973 (15th ed.1984). Mr. Stammen agreed with this definition of drafting, and agreed "that what the [Apple] plotter does or creates is a product of drafting[.]" He also stated that, in his opin-

ion, the Apple plotter fell within the language of item 710.80, TSUS.

*Id.* at 13.

It would also seem clear that the reference to "drafting" in the memorandum opinion is a shorthand for merchandise embraced in item 710.80, TSUS, and reflects the many references to "drafting" made throughout the trial.

In further support of its contention, the defendant cites *John A. Steer Co. v. United States*, 53 CCPA 67, C.A.D. 879 (1966). In *Steer*, the imported merchandise consisted of "rectangular coordinate plotters." The plotters were classified by the Customs Service as "mathematical instruments," under paragraph 360 of the Tariff Act of 1930, as modified. Plaintiff protested this classification, and contended that the plotters were properly classifiable as "drawing instruments," also under paragraph 360. *See id.* at 67. The Customs Court held for the defendant, and sustained the classification by Customs. *See id.*

On appeal, the Court of Customs and Patent Appeals reversed. The court first reviewed the evidence, and then concluded that the coordinate plotters were mechanical instruments which "are nothing more or less than instruments for drawing extremely accurate parallel lines." *Id.* at 70. The court added that "one would consider a mathematical instrument to be designed to perform a mathematical operation such as adding, subtracting, multiplying, dividing, integrating, etc." *Id.* The court also noted that "the uncontroverted testimony is that rectangular coordinate plotters can perform none of these operations." *Id.*

Despite the classification of coordinate plotters as "drawing instruments" in *Steer*, it is clear that since the plotters in this case are factually distinguishable, *Steer* is not persuasive authority. The Apple x-y plotters in this case are known as "output devices," and are intended to be used with computers. *See Apple Computer*, Slip Op. at 18. Furthermore, the x-y plotters "bear a strong physical resemblance to computer dot matrix printers." *Id.* at 17. In contrast, the coordinate plotters in *Steer* were mechanical instruments, designed for use

as hand tools. Indeed, in support of this motion the defendant notes that the coordinate plotters in *Steer* were "mechanical device[s] that, from the court of appeal's description, [were] quite similar to the traditional 'drafting machine' referred to in the case now before this Court."

It would seem clear that the court considered whether the x-y plotter was described by any of the terms in item 710.80, TSUS. The court noted that the x-y plotters were classified by the Customs Service under item 710.80, TSUS, as "Drafting and *drawing machines,* instruments, and apparatus, and parts thereof." *Apple Computer,* Slip Op. at 3 (emphasis added). It cannot be doubted that the post-trial briefs of both parties expressly raised arguments pertaining to the classification of the Apple x-y plotters as "drawing machines."

■ Furthermore, the heading to item 710.80, TSUS, includes "[d]rafting machines, compasses, dividers, ruling pens, lettering pens (including fountain-pen type) used by draftsmen, pantographs, drawing curves, rulers, scribers, straight edges, disc calculators, slide rules, and other instruments, all the foregoing which are *drawing, marking-out or mathematical calculating instruments....* " (emphasis added). The court in *Apple Computer* relied in part on the doctrine of *noscitur a sociis,* i.e., known by its associates. *See Apple Computer,* Slip Op. at 19. Hence, the terms "drawing machine" or "drawing instrument" must be interpreted in association with the other terms found in the heading to item 710.80, TSUS. *See Economy Cover Corp. v. United States,* 76 Cust.Ct. 130, 132, C.D. 4645, 411 F.Supp. 783, 784 (1976).

■ All of the instruments listed in item 710.80, TSUS, are mechanical instruments, designed to assist draftspersons in drawing by hand. None of the instruments are designed for use with computers. Hence, the term "drawing machine" must be interpreted similarly, as a mechanical instrument.

■ The defendant also contends that the court misapplied the principles of statutory construction that apply to *eo nomine*

terms. In support of its contention, the defendant cites *United States v. Standard Surplus Sales,* 69 CCPA 34, 38, 667 F.2d 1011, 1014 (1981). According to the defendant, the court in *Standard Surplus* "concluded that newly created merchandise fell under an *eo nomine* provision based upon *use* of the merchandise, even though there were significant physical differences between it and merchandise existing at the time of enactment of the tariff provision." (emphasis in original).

In *Standard Surplus,* the Court of Customs and Patent Appeals reversed this court, and held that certain imported backpacks were properly classified by the Customs Service as "luggage," under item 706.24, TSUS. The court considered the similarities between the imported backpacks and "knapsacks," an exemplar of "luggage." Contrary to the defendant's assertion, however, the appellate court in *Standard Surplus* expressly stated that the "attempt to distinguish the imported backpacks from 'knapsacks,' by comparing them to a sample knapsack ... must fail." *Id.* at 38, 667 F.2d at 1014. The court noted that backpacks and knapsacks have similar uses and similar lexicographic definitions, and concluded that the imported backpacks were properly classifiable under the same item as knapsacks. *See id.* at 39–41, 667 F.2d at 1014–16.

In addition, in this case, the court carefully considered the similarities in use between the Apple x-y plotters and drafting and drawing machines. The court noted that traditional drafting machines are used to assist designers in writing by hand. *See Apple Computer,* Slip Op. at 18. In contrast, the Apple x-y plotters are designed for use with computers. Hence, the court concluded that "the Apple plotter and traditional drafting machines have clearly different functions or uses." *Id.*

■ In customs classification cases the question presented is often difficult and close. In these cases, the parties render valuable assistance to the court in presenting the testimony of expert witnesses whose testimony facilitates deciding the classification question presented. It is the function of the trial court to pass upon the

credibility, reliability, and persuasiveness of the testimony presented. A resolution of the issue by accepting the testimony of one witness rather than that of another does not imply a failure to consider the testimony of all witnesses who have testified. It would be unfair and a disservice to experts who testify in these cases to require trial courts to attempt to set forth the mental process which causes a trial judge to find the testimony of one expert witness more persuasive than that of another witness. It should suffice if the court has heard and considered all of the testimony fairly, and has set forth findings which reveal clearly the testimony that it has accepted as persuasive.

## CONCLUSION

It is the conclusion of the court that the defendant has failed to establish that the granting of a motion to amend or alter the judgment in *Apple Computer, Inc. v. United States,* 14 CIT ——, Slip Op. 90–14 (Feb. 13, 1990), is appropriate. Accordingly, the defendant's motion is denied.